378 So.2d 218 (1979)
Charles H. BROWN et al.
v.
Joe A. STONE, Houston Municipal Separate School District, et al.
No. 51553.
Supreme Court of Mississippi.
December 19, 1979.
Rehearing Denied January 9, 1980.
*219 Harry N. Rayburn, Jr., Thad L. Fowler, III, Jackson, for appellants.
Armis E. Hawkins, Houston, for appellees.
Before SMITH, P.J., and WALKER and BROOM, JJ.
SMITH, Presiding Justice, for the Court.
This is an appeal by Charles H. Brown, father and next friend of Chad Allan Brown, a six year old boy, from a decree of the Chancery Court of Chickasaw County sustaining a demurrer filed to his bill which sought an injunction to compel the Board of Trustees of the Houston Municipal Separate School District to admit his son as a student without compliance with the immunization requirements of Mississippi Code Annotated section 41-23-37 (1972 Supp.). This statute provides, (among other things):
Except as provided hereinafter, it shall be unlawful for any child to attend any school, kindergarten or similar type facility intended for the instruction of children (hereinafter called "schools"), either public or private, unless they shall first have been vaccinated against those diseases specified by the State Health Officer.
A certificate of exemption from vaccination for medical reasons may be offered on behalf of a child by a duly licensed physician and may be accepted by the local health officer when, in his opinion, such exemption will not cause undue risk to the community. A certificate of religious exemption may be offered on behalf of a child by an officer of a church of a recognized denomination. This certificate shall certify that parents or guardians of the child are bona fide members of a recognized denomination whose religious teachings require reliance on prayer or spiritual means of healing.
There was filed with the bill the following certificate, signed by a minister of the Church of Christ:
Be it known that the church of Christ as a religious body does not teach against the use of medecines, (sic) immunizations or vaccinations as prescribed by a duly (sic) physician. However, Dr. Charles Brown, our local chiropractor, who is a member of the North Jackson Street *220 Church of Christ in Houston, Mississippi does have strong convictions against the use of any kind of medications and we respect his views.
 /s/ Charles E. Bland
 Charles E. Bland
 Minister
The bill recited (a) that six-year old Chad Allan Brown was of sufficient age and residence to qualify for admission to the first grade of the Houston Elementary School, but had not been vaccinated against those diseases specified under Senate Bill No. 2650 (Mississippi Code Annotated section 41-23-37, [1972] supra), enacted April 21, 1978, (b) Charles H. Brown, the father, has not permitted his son to be vaccinated because of "strong and sincere religious beliefs actively practiced and followed" by Charles H. Brown, (c) Charles H. Brown is a member of the Church of Christ, a religious body which does not teach against the use of medicines, immunizations or vaccinations prescribed by a physician, (d) Charles H. Brown has sought a religious exemption from vaccination (of his son) but it was denied because the certificate did not comply with Senate Bill No. 2650, (e) Chad Allen Brown was denied admission to the school because of the failure to be immunized under the provisions of Senate Bill No. 2650, (f) Senate Bill No. 2650 and Mississippi Code Annotated section 37-7-301(i) (1972) are invalid "insofar as they force complainants to join a religious organization in order to practice their religious tenants (sic) freely," and the denial of admission of Chad Allan Brown violates complainants' rights protected by the First Amendment to the United States Constitution.
A general demurrer was interposed to the bill and sustained by the chancellor.
Appellants concede that mandatory immunization against dangerous diseases, without exemptions based on religious beliefs or convictions, has been held constitutionally valid as a reasonable exercise of police power. Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905); Zucht v. King, 260 U.S. 174, 43 S.Ct. 24, 67 L.Ed. 194 (1922). They contend, however, that the provision for religious exemption violates the First Amendment of the United States Constitution protecting the free exercise of religion.
Appellants rely upon a pronouncement of the New York Court in Maier v. Besser, 73 Misc.2d 241, 341 N.Y.S.2d 411 (1972), which involved a suit of a parent on behalf of his children who had been required to leave school because they did not have a certificate of immunization in compliance with the New York Public Health Law, § 2164(8) of which provided:
This section shall not apply to children whose parent, parents, or guardians are bona fide members of a recognized religious organization whose teachings are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school.
In Maier, a case decided by the Supreme Court of Onondaga County, and which does not appear to have reached the Court of Appeals of New York, the court of last resort of that state, the parent asserted that because of religious beliefs entertained by himself and his children which were "basically similar to those held by Christian Scientists," his children had not been immunized although it was admitted that they were not members of the Christian Scientist Church.
The New York Court (Onondaga County) held that there was no rational basis or legitimate public interest requiring that a person be a member of an organized religious body as distinguished from one whose genuine beliefs qualify him for a religious exemption.
The fundamental and paramount purpose of the Mississippi Legislature in the enactment of Senate Bill No. 2650, Mississippi Code Annotated section 41-23-37 was to afford protection for school children against crippling and deadly diseases by immunization. That this can be done effectively and safely has been incontrovertibly demonstrated over a period of a good many *221 years and is a matter of common knowledge of which this Court takes judicial notice.
If the religious exemption from immunization is to be granted only to members of certain recognized sects or denominations whose doctrines forbid it, and, as contended by appellants, to individuals whose private or personal religious beliefs will not allow them to permit immunization of their children, to this extent the highly desirable and paramount public purpose of the Act, that is, the protection of school children generally comprising the school community, is defeated.
Is it mandated by the First Amendment to the United States Constitution that innocent children, too young to decide for themselves, are to be denied the protection against crippling and death that immunization provides because of a religious belief adhered to by a parent or parents?
In Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court dealt with a mandatory school attendance requirement under a Wisconsin statute. Members of the Amish faith refused to comply and were convicted. When the case reached the Wisconsin Supreme Court the convictions were reversed. On certiorari to the United States Supreme Court the action of the Wisconsin Supreme Court was affirmed on the ground that the state's interest in compulsory education was not so compelling that the tenets of the Amish faith should be required to give way.
The Court said that in order to uphold a statute under such circumstances (where religious beliefs and public or state interests conflict) "it must appear either that the State does not deny the free exercise of religious belief by its requirement, or that there is a state interest of sufficient magnitude to override the interest claiming protection under the Free Exercise Clause." (406 U.S. at 214, 92 S.Ct. at 1532, 32 L.Ed.2d at 24).
In Rampino, Religious Objection To Medical Treatment, 52 A.L.R.3d 1118 (1973), the question of mandatory medical treatment of children whose lives are not in danger is discussed.
[T]he courts have weighed the interest of the state in protecting its citizenry as against the desirability of religious freedom devoid of unnecessary governmental intrusion and have generally concluded that the state interest was paramount.
Thus, for example, it has been settled that a state, as parens patriae, may order medical treatment to save the life of a child notwithstanding the parents' religious objections to the treatment.
And it has likewise been decided that parental religious objection to the vaccination of a child, as a prerequisite to school attendance, must give way to the overriding interest of the state in protecting the community at large from the spread of contagious disease. (52 A.L.R.3d at 1119).
In Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), rehearing denied, 321 U.S. 804, 64 S.Ct. 784, 88 L.Ed. 1090, the Court considered a state statute which prohibited child labor in public places. A member of Jehovah's Witnesses was convicted under the statute for directing her child to sell religious pamphlets on street corners. It was held that the statute did not violate the parent's religious freedom and that the right to practice religion freely does not include the liberty to expose the community or the child to communicable disease or the latter to ill health or death. 52 A.L.R.3d at 1120.
The case of Cude v. State, 237 Ark. 927, 377 S.W.2d 816 (1964) involved a question closely analogous with that under consideration here. The parents of three school age children refused to permit vaccination of their children as required by statute for school attendance, contending that it was contrary to their religion to do so. Persistent violation of the school attendance law resulted in the conviction of the father. When fined for this breach he continued to refuse to have the children vaccinated so that they could attend school as mandated by statute. The children were placed in custody of the Child Welfare Division and the issue reached the Arkansas Supreme *222 Court. For the purposes of the appeal, the Arkansas Supreme Court assumed that the Cudes held a claimed religious belief in "good faith." In disposing of the case the Court said:
The U.S. Supreme Court said in Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645: "The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death. * * * Parents may be free to become martyrs themselves. But it does not follow they are free, in identical circumstances, to make martyrs of their children before they have reached the age of full and legal discretion when they can make that choice for themselves."
It is a matter of common knowledge that prior to the development of protection against smallpox by vaccination, the disease, on occasion, ran rampant and caused great suffering and sickness throughout the world. According to the great weight of authority, it is within the police power of the State to require that school children be vaccinated against smallpox, and that such requirement does not violate the constitutional rights of anyone, on religious grounds or otherwise. In fact, this principle is so firmly settled that no extensive discussion is required.
.....
In cases too numerous to mention, it has been held, in effect, that a person's right to exhibit religious freedom ceases where it overlaps and transgresses the rights of others. We cite a few cases upholding the validity of statutes requiring vaccination, and affirming orders of courts authorizing blood transfusions, etc. In Re Whitmore, Dom.Rel.Ct.N.Y., 47 N.Y.S.2d 143; vaccination of school child. Sadlock v. Board of Education, 137 N.J.L. 85, 58 A.2d 218; vaccination of school child. State v. Perricone, 37 N.J. 463, 181 A.2d 751; giving blood transfusion to infant. City of New Braunfels v. Waldschmidt, 109 Tex. 302, 207 S.W. 303; vaccination of school child. Mosier v. Barren County Board of Health, 308 Ky. 829, 215 S.W.2d 967; vaccination of school child. Board of Education of Mountain Lakes v. Maas, 56 N.J. Super. 245, 152 A.2d 394; vaccination of school child. In Re Clark, Ohio Com.Pl., 185 N.E.2d 128; blood transfusion for three year old child.
This court said in Seubold v. Fort Smith Special School District, 218 Ark. 560, 237 S.W.2d 884: "In Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643, the Supreme Court of the United States considered the matter of compulsory vaccination as infringing on rights claimed under the United States Constitution, and held that a State law requiring compulsory vaccination did not deprive a citizen of liberty guaranteed by the United States Constitution. More recently, in the case of Zucht v. King, 260 U.S. 174, 43 S.Ct. 24, 25, 67 L.Ed. 194, the United States Supreme Court again considered the matter of compulsory vaccination; and Mr. Justice Brandeis, speaking for the Court said: `* * * Long before this suit was instituted, Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643, 3 Ann.Cas. 765, had settled that it is within the police power of a state to provide for compulsory vaccination.'" (377 S.W.2d at 819).
After a thoughtful consideration of the facts and the arguments advanced by appellants, we have concluded that the statute in question, requiring immunization against certain crippling and deadly diseases particularly dangerous to children before they may be admitted to school, serves an overriding and compelling public interest, and that such interest extends to the exclusion of a child until such immunization has been effected, not only as a protection of that child but as a protection of the large number of other children comprising the school community and with whom he will be *223 daily in close contact in the school room. The relationship of parent and child is one in which the law concerns itself more with parental duties than with parental rights. The relationship carries with it a duty resting upon the parent to provide the child with food, clothing and shelter and to protect the child from preventable exposure to danger, disease and immorality. It must not be forgotten that a child is indeed himself an individual, although under certain disabilities until majority, with rights in his own person which must be respected and may be enforced. Where its safety, morals and health are involved, it becomes a legitimate concern of the state.
The protection of the great body of school children attending the public schools in Mississippi against the horrors of crippling and death resulting from poliomyelitis or smallpox or from one of the other diseases against which means of immunization are known and have long been practiced successfully, demand that children who have not been immunized should be excluded from the school community until immunization has been accomplished. That is the obvious overriding and compelling public purpose of Senate Bill No. 2650. To the extent that it may conflict with the religious beliefs of a parent, however sincerely entertained, the interests of the school children must prevail. Senate Bill No. 2650 is a reasonable and constitutional exercise of the police power of the state insofar as it provides for the immunization of children before they are to be permitted to enter school.
The exception, which would provide for the exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children whose parents have no such religious convictions. To give it effect would result in a violation of the Fourteenth Amendment to the United States Constitution which provides that no state shall make any law denying to any person within its jurisdiction the equal protection of the laws, in that it would require the great body of school children to be vaccinated and at the same time expose them to the hazard of associating in school with children exempted under the religious exemption who had not been immunized as required by the statute.
In Wilson v. Jones County Board of Supervisors, 342 So.2d 1293 (1977), this Court said:
It is the Court's duty in passing on the constitutionality of a statute to separate the valid from the invalid part, if this can be done, and to permit the valid part to stand unless the different parts of the statute are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that if all cannot be carried into effect it would not have enacted the residue independently. Howell v. State, 300 So.2d 774, 781 (Miss. 1974); American Express Co. v. Beer, 107 Miss. 528, 536, 65 So. 575 (1914); Adams v. Standard Oil Co., 97 Miss. 879, 53 So. 692 (1910); Campbell v. Miss. Union Bank, 7 Miss. 625 (1842).
.....
If when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. (342 So.2d at 1296).
We have no difficulty here in deciding that the statute is "complete in itself" without the provision for religious exemption and that it serves a compelling state interest in the protection of school children. Therefore, we hold that the provision providing an exception from the operation of the statute because of religious belief is in violation of the Fourteenth Amendment to the United States Constitution and therefore is void. As the United States Supreme Court said in In Re Gault, 387 U.S. 1, 13, 87 S.Ct. 1428, 1436, 18 *224 L.Ed.2d 527 (1967): "Whatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."
We find that all of the other provisions of the statute are valid and constitutional and embody a reasonable exercise of the police power of the state.
The decree appealed from will, therefore, be affirmed.
AFFIRMED.
The case was considered by a conference of the Judges en banc.
PATTERSON, C.J., ROBERTSON, P.J., and WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
SUGG, J., took no part.