**Stanley HANZEL, et al., Plaintiffs,**

v.

**Dr. Milton J. ARTER, et al., Defendants.**

**No. C–3–82–861.**

United States District Court, S.D. Ohio, W.D.

Dec. 12, 1985.

**1260**

Michael Dyer, Dayton, Ohio, for plaintiffs.

Larry A. Smith, Dayton, Ohio, for defendants.

DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 16) AND SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 17); JUDGMENT FOR DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, District Judge.

## I. Facts

This case comes before the Court on stipulated facts (Doc. # 14) and cross motions for summary judgment (Docs. # 16, 17). The New Lebanon Board of Education is the sole Defendant remaining in this action, the individual Defendants having been dismissed at the request of Plaintiffs. (Doc. # 12).

The basis of controversy herein is the application and interpretation of certain Ohio statutes. Ohio Rev.Code § 3313.-671(A) requires that Ohio public school students be immunized against certain specified diseases. Ohio Rev.Code § 3313.67 gives to local boards of education the authority to make rules to secure the immunization of public school students. An exception to this immunization requirement is contained in Ohio Rev.Code § 3313.-671(A)(3), which provides:

> A pupil who presents a written statement of his parent or guardian in which the parent or guardian objects to the immunization for good cause, including religious convictions, is not required to be immunized.

Stanley Hanzel, Jr. and Tisha Hanzel, the children of Plaintiffs Stanley Hanzel and Sandy Hanzel, attend the New Lebanon public schools. Plaintiffs object to the immunization of their children on the basis of their belief in "chiropractic ethics," a body of thought which teaches that injection of foreign substances into the body is of no benefit and can only be harmful. (Doc.

# 14, Stipulations ¶ 5, 6; Doc. # 16, Affidavit of Sandy Hanzel).[1]

In a meeting with Dr. Milton Arter, Defendant's superintendent, and the school nurse, Plaintiff Sandy Hanzel explained why her children had not been immunized as required by Ohio Rev.Code § 3313.-671(A). In two subsequent letters sent by Plaintiff Sandy Hanzel to Defendant, she reiterated that her personal philosophy and belief in chiropractic ethics had led her to refuse immunization for her children, and she requested that they be exempted from vaccination under Ohio Rev.Code § 3313.-671(A)(3). (Doc. # 14, ¶ 5, 6). An informal hearing was then convened by Dr. Arter. Plaintiff, represented by counsel, expressed her views against immunization at the hearing. (Doc. # 14, ¶ 7).

Dr. Arter, after the hearing, informed Plaintiffs in writing that their belief in chiropractic ethics did not constitute "good cause" for an exemption for their children under Section 3313.671(A)(3), and that their children would have to be immunized in order that they be allowed to remain in the New Lebanon public schools. (Doc. # 14, ¶ 11, 12). Defendant affirmed Dr. Arter's decision in its Resolution 82–138. (Doc. # 16, Exh. 1).

Plaintiffs thereupon filed their Complaint and Amended Complaint in the instant case. (Docs. # 1, 6). In their Amended Complaint, Plaintiffs seek either that the "Ohio Immunization Laws" be declared unconstitutional on their face or as applied, or, alternatively, that this Court issue a declaratory judgment that Plaintiffs' personal beliefs against immunization amount to "good cause" for Plaintiffs' children to be exempted from vaccination under Sections 3313.67 and 3313.671(A)(3). Plaintiffs also seek a permanent injunction against Defendant's expulsion of their children from the New Lebanon public schools. The parties have stipulated that Plaintiffs' children be allowed to remain in school, without having been immunized, pending

resolution of this case. (Doc. # 2). This stipulation was recently reiterated by the Court. (Doc. # 20).

## II. *Privacy*

■ Plaintiffs challenge the immunization requirement of Ohio Rev.Code § 3313.-671(A) on privacy grounds, contending that the constitutional right to privacy is broad enough to apply to the decision to subject oneself or one's children to immunization. Were the right of privacy to protect individual decisions relating to immunization, then such decisions would implicate a "fundamental right." State regulation of an individual's decision as to immunization would then require a "compelling state interest" in order to be found valid. *Roe v. Wade*, 410 U.S. 113, 152–55, 93 S.Ct. 705, 726–28, 35 L.Ed.2d 147 (1973). Plaintiffs argue that Ohio lacks a compelling interest sufficient to overcome their right to privacy with respect to immunization of their children.

The United States Constitution nowhere mentions a right of privacy, and the Supreme Court has not recognized the existence of a general right to privacy. *J.P. v. DeSanti*, 653 F.2d 1080, 1087 (6th Cir. 1981). Rather, the Supreme Court has found the right of privacy to protect certain individual decisions relating, for example, to the termination of pregnancy, *Roe v. Wade*, 410 U.S. at 113, 93 S.Ct. at 705, contraception, *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), marriage, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), and child rearing, *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). The Supreme Court recently observed that the core types of decisions encompassed by the right of privacy are those involving "freedom of personal choice in matters of marriage and family life." *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 427, 103 S.Ct. 2481, 2491, 76 L.Ed.2d 687 (1983). The fact that the Constitution protects several spe-

---

1. Stanley Hanzel, Jr. and Tisha Hanzel, Plaintiffs' children, have both submitted affidavits indicating that their views as to immunization are identical to those held by their parents. (Doc. # 16).

cific aspects of personal choice, however, does not mean that it protects all aspects of individual privacy. *J.P. v. DeSanti*, 653 F.2d at 1088.

Long before much of this attention to the right of privacy, a Massachusetts resident urged the Supreme Court to invalidate a compulsory vaccination statute on the grounds that the statute amounted to a deprivation of liberty and that it was hostile to the individual's own freedom to care for his or her body. *Jacobson v. Massachusetts*, 197 U.S. 11, 26, 25 S.Ct. 358, 361, 49 L.Ed. 643 (1905). The challenge was rejected, a majority of the Supreme Court holding that the Constitution's guarantee of liberty did not include an absolute right to individual freedom from restraint, and that the collective interest in health and safety outweighed the petitioner's interest. *Id.* at 38–39, 25 S.Ct. at 366–67.

The *Jacobson* court's view of bodily integrity was revisited decades later in *Roe v. Wade*. There, in attempting to describe the parameters of a woman's right to abortion, Justice Blackmun observed:

> In fact, it is not clear to us that the claim asserted by some *amici* that one has an unlimited right to do with one's body as one pleases bears a close relationship to the right of privacy previously articulated in the Court's decision. The Court has refused to recognize an unlimited right of this kind in the past. *Jacobson v. Massachusetts*, 197 U.S. 11 [25 S.Ct. 358, 49 L.Ed. 643] (1905) (vaccination); *Buck v. Bell*, 274 U.S. 200 [47 S.Ct. 584, 71 L.Ed. 1000] (1927) (sterilization) 410 U.S. at 154, 93 S.Ct. at 727.

This Court believes this passage in *Roe v. Wade* to signal the inconsistency of Plaintiffs' position—that the immunization decision is entitled to the same protection as the decision to bear children or to terminate a pregnancy—within the parameters of the privacy right which has been etched out by the Supreme Court. Certainly contraception, abortion and vaccination all involve the human body and some form of intrusion or infiltration of it. Yet it does not necessarily follow, in keeping with Justice Blackmun's observation in *Roe v. Wade*, that bodily autonomy *per se* has been deemed "fundamental" by the Supreme Court's rulings. Such a definition of privacy would seem to ignore not only the thrust of the *Jacobson* decision, but also the permissibility of the forced blood tests, *see Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), and military conscription, *see Selective Service Draft Cases*, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918), which have been upheld despite the impact of such compelled decisions upon the human body. Henkin, Privacy and Autonomy, 74 Colum.L.Rev. 1410, 1429 (1974).

One commentator has read the Supreme Court's privacy rulings as establishing that privacy, while rooted in a reference to the body, is limited to bodily or mental intimacy. Vaccination, in this view, may interfere with bodily autonomy, but fails to offend the intimacy of the individual's personal identity. Gerety, Redefining Privacy, 12 Harv.Civ.R.-Civ.Lib.L.Rev. 233, 274–75 n. 153 (1977). However conceptualized, given the Supreme Court's view of the immunization decision, its view of the lack of congruence between bodily autonomy and privacy, and our mandate to give a fairly restrictive reading to these aspects of personal choices included in the privacy right, this Court concludes that the immunization decision is not encompassed by the right of privacy.

In light of this conclusion with respect to privacy, the Court does not reach the issue of whether the state's interest in public health would be so compelling as to allow it to limit an individual's decision as to vaccination. The Supreme Court's citation of *Jacobson* in *Roe v. Wade* might be taken as an indication that such a compelling state interest in public health is a limit on the immunization decision. Plaintiffs contend, on the other hand, that health conditions today are so improved that *Jacobson* is no longer relevant. Another consideration could be the undefined breadth of Ohio Rev.Code § 3313.671(A)(3) in its delegation of authority to local officials to exempt

students from immunization for "good cause." While the statute's potential, on its face, for immunization exemptions might be sufficient to call into question the compelling nature of the state's interest in public health, Defendant had, in actuality, only granted two such "good cause" exemptions at the time of the filing of the motions in this case. These factors having been noted, the Court finds it unnecessary to resolve this issue due to its conclusion that the immunization decision is not encompassed within the right of privacy.

### III. *Due Process*

■ Plaintiffs also argue that Section 3313.671(A)(3), as applied by Dr. Arter and ratified by Defendant, violates the Fourteenth Amendment's guarantee of due process.[2] Plaintiffs do not contend that they were denied a meaningful opportunity to be heard. Rather, their charge is that this statutory exemption to Ohio's immunization requirement authorizes local school officials to burden a fundamental right without providing guidelines for the officials' exercise of their authority.

Plaintiffs rely upon cases such as *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), which involved a Connecticut statute prohibiting solicitation on public streets in the absence of a permit issued by local officials. The statute charged local officials with the task of determining whether the "cause" being promoted through solicitation was a religious or philanthropic one, and in the event that such a cause was found, directed that a permit be issued. *Id.* at 302, 60 S.Ct. at 902. Upon a challenge to the statute by three members of the Jehovah's Witness sect, each of whom had been prosecuted for solicitation without the necessary license, the Supreme Court struck down their convictions under the statute. As the statute allowed local officials to determine who could engage in solicitation based on their view of the religious content of the communication, the statute was found to interfere with freedom of speech and freedom of religion. *Id.* at 303–307, 60 S.Ct. at 903–905.

At issue in *Niemotko v. Maryland*, also cited by Plaintiffs, was a custom whereby groups desiring to use a local park for meetings would apply to local officials for a permit. 340 U.S. 268, 269, 71 S.Ct. 325,

---

**2.** In their memoranda, Plaintiffs focus solely upon the unconstitutionality of Ohio Rev.Code § 3313.671(A)(3) as applied in this case. To the extent that their Amended Complaint suggests that Plaintiffs also believe this provision to be unconstitutional on its face, the Court declines to consider such an argument.

Ohio Rev.Code § 3313.671(A)(3) may well be susceptible of an application violative of the free exercise or equal protection guarantees of the first and fourteenth amendments, due to the standardless delegation of discretion which the state legislature has imparted to local school boards. *Cf. Kent v. Dulles*, 357 U.S. 116, 129, 78 S.Ct. 1113, 1119, 2 L.Ed.2d 1204 (1958). Yet one of the "cardinal rules" governing the federal courts provides that "one to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or situations in which its application might be unconstitutional." *Brockett v. Spokane Arcades, Inc.*, — U.S. —, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985) (quoting *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960)).

One of the exceptions which exists to this "cardinal rule" is the overbreadth doctrine, which also involves the first amendment. This

doctrine, and the closely-related void-for-vagueness doctrine, allows invalidation of a statute, whether or not the plaintiff has engaged in activity prohibited by the statute, in situations where the statute threatens to inhibit free speech. *Brockett*, 105 S.Ct. at 2802; *Raines*, 362 U.S. at 22, 80 S.Ct. at 523; J. Nowak, R. Rotunda and J. Young, *Constitutional Law*, Ch. 18, § III at 867–72 (2nd ed. 1983); C. Wright, *Federal Courts*, Ch. 2, § 13 at 73–74 (4th ed. 1983). When the overbreadth doctrine has been applied in cases involving free exercise of religion, its application has been justified by the interference with free speech also threatened by the statute in question. *See Kunz v. New York*, 340 U.S. 290, 295, 71 S.Ct. 312, 315, 95 L.Ed. 280 (majority opinion), 304–305, 71 S.Ct. at 320 (Jackson, J., dissenting); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); J. Nowak, R. Rotunda and J. Young, *Constitutional Law*, Ch. 19, § III at 1055–6. The instant statute, Ohio Rev.Code § 3313.671(A)(3), does not pose an inhibitory effect on free speech, whatever the other potential constitutional infirmities in its application. For these reasons, the Court does not consider whether Ohio Rev.Code § 3313.671(A)(3) may be unconstitutional on its face.

326, 95 L.Ed. 267 (1951). This practice was challenged by Jehovah's Witnesses who were denied a permit to use the park due to the discomfort of local officials with the religious views of these individuals. The Supreme Court held the practice of allowing local officials this discretionary control over public parks unconstitutional on the basis of freedom of religion. It also found an equal protection violation, given that other religious groups had been given permission to make use of the park. *Id.* at 272–73, 71 S.Ct. at 327–28. *See also Lovell v. City of Griffin,* 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938); *Avard v. Dupuis,* 376 F.Supp. 479, 482–83 (D.N.H.1974).

Plaintiffs contend that, as in *Cantwell* and *Niemotko,* Defendant's unguided determination as to what constitutes "good cause" for exemption from vaccination is also unconstitutional given the "close parallel" between the cited cases and the instant case. This Court cannot agree. While both cases do involve the exercise of administrative discretion, the place of religious beliefs in our constitutional framework, and the protection accorded them, are without parallel in the realm of secular beliefs. This distinction was articulated by the Supreme Court in *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), in their evaluation of certain Amish citizens' challenge to Wisconsin's compulsory school-attendance statute:

> In evaluating those claims we must be careful to determine whether the Amish religious faith and their mode of life are, as they claim, inseparable and interdependent. A way of life, however virtuous and admirable, may not be interposed as a barrier to reasonable state regulation of education if it is based on purely secular considerations; to have the protection of the Religion Clauses, the claims must be rooted in religious belief. Although a determination of what is a "religious" belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests. Thus, if the Amish asserted their claims because of their subjective evaluation and rejection of the contemporary secular values accepted by the majority, much as Thoreau rejected the social values of his time and isolated himself at Walden Pond, their claims would not rest on a religious basis. Thoreau's choice was philosophical and personal rather than religious, and such belief does not rise to the demands of the Religious Clauses.

*Id.* at 215–16, 92 S.Ct. at 1533 (footnote omitted).

*Yoder* reflects the view that, even if the values and objectives of two groups are identical, their claims will receive differing treatment under the Constitution depending on whether or not their claims are based upon religious tenets. Such is the balance between flexibility and anarchy which has been struck in our constitutional system. As such, the Court cannot accept that Defendant's action with respect to Plaintiffs and their children can be viewed as an exercise of discretion which burdened a fundamental right in the manner of *Cantwell* and *Niemotko.* Plaintiffs' challenge to the application of Section 3313.-671(A)(3) on this basis is, accordingly, not well taken.[3]

---

**3.** Even if this Court were to agree with Plaintiffs that Section 3313.671(A)(3) is unconstitutional and that its application must be enjoined, the result would likely be that this statutory exemption to Ohio's immunization requirement would be struck, leaving extant the immunization requirement contained in Ohio Rev.Code § 3313.-671(A). Under Ohio law, one part of a statute may be found unconstitutional without affecting the validity of the remainder of the statute, provided that the stricken portion of the statute was not so essential to the remainder of the statute or so related to the general purpose of its enactment as to warrant the conclusion that the state legislature would have refused to adopt the statute with the invalid portion stricken therefrom. *Emmons v. Keller,* 21 Ohio St.2d 48, 254 N.E.2d 687 (1970). The Court believes that Ohio Rev.Code § 3313.671(A), providing for immunization for public school students, would indeed have been enacted without an exemption provision. Other courts which have invalidated stat-

## IV. *Equal Protection*

Finally, Plaintiffs challenge Defendant's application of Section 3313.671(A)(3) on equal protection grounds. The parties have stipulated that religious reasons have been found by Defendant to be "good cause" sufficient to exempt two other school children from vaccination under Section 3313.671(A)(3). (Doc. #14, ¶8). Plaintiffs contend that their objection to vaccination based upon chiropractic ethics renders them similarly situated, for purposes of the "good cause" contemplated by Section 3313.671(A)(3), to those parents whose objections to vaccinations are based upon religious teachings. Accordingly, Plaintiffs assert that Defendant has violated the equal protection clause of the Fourteenth Amendment by denying them an exemption accorded to similarly situated individuals.

This Court has no quarrel with the proposition that, even though Section 3313.-671(A)(3) itself contains no classification, the classification established by Defendant's administrative actions may be tested under the equal protection clause. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The Court also believes that the standard for its evaluation of Defendant's application of Section 3313.-671(A)(3) is the same standard which it would apply if Section 3313.671(A)(3) itself created the classification to which Plaintiffs object. Plaintiffs acknowledge that their challenge to the statute's application does not implicate the free exercise clause of the First Amendment. Nor does Defendant's application of the statute involve a classification by race, alienage or national origin. The minimum scrutiny which the Supreme Court has deemed applicable to economic and social legislation is thus the proper standard of review. As explained by the Supreme Court in *City of Cleburne v. Cleburne Living Center,* — U.S. —, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), the essence of minimum scrutiny is

that where individuals in the group affected by a law have distinguishing characteristics relevant to interests the state has the authority to implement, the courts have been very reluctant, as they should be in our federal system and with our respect for the separation of powers, to closely scrutinize legislative choices as to whether, how and to what extent those interests should be pursued. In such cases, the Equal Protection Clause requires only a rational means to serve a legitimate end. *Id.* 105 S.Ct. at 3255.

Plaintiffs contend that the purpose of Ohio's vaccination statute is the preservation of health. This Court agrees, and would go further in observing that the purpose of having an exemption to such a statute is to provide some flexibility at the local level in the enforcement of such a requirement. The Court cannot agree, however, with Plaintiffs' argument that any distinction between chiropractic ethics and religious beliefs for purposes of the "good cause" exemption is unrelated to the purpose of the statutory system, and thus discriminatory and unconstitutional. As made clear by the Supreme Court in *Wisconsin v. Yoder,* philosophical beliefs do not receive the same deference in our legal system as do religious beliefs, even when the aspirations flowing from each such set of beliefs coincide. The fact that this case does not involve a challenge under the free exercise clause of the First Amendment does not make this differentiation any less relevant herein.

Minimum scrutiny under the equal protection clause requires this Court only to consider whether Defendant's exercise of its discretion under Section 3313.671(A)(3) was a rational means of permitting exceptions to Ohio's vaccination requirement. Were this a case involving Defendant's determination that some religious beliefs constitute "good cause" and some do not, perhaps this would be a different case. Given the different weights accorded religious

utory immunization exemptions have struck only the exemption upon a successful constitutional challenge, leaving the statutory immunization requirement itself intact. *See Avard v.*

*Dupuis,* 376 F.Supp. 479 (D.N.H.1974); *Brown v. Stone,* 378 So.2d 218 (Miss.1979); *Dalli v. Board of Education,* 358 Mass. 753, 267 N.E.2d 219 (1971).

## 1266

and secular beliefs, however, this Court cannot find Defendant to have violated Plaintiffs' right to the equal protection of the laws.

*Dalli v. Board of Education,* 358 Mass. 753, 267 N.E.2d 219 (1971), cited by the Plaintiffs in support of their equal protection claim, is inapposite herein. *Dalli* involved a statutory exemption to Massachusetts' compulsory immunization law for members "of a recognized church or religious denomination" whose tenets conflicted with the practice of vaccination. The statute was challenged by an individual who did not belong to an organized religion but whose objection to vaccination was based upon her own belief in the Bible and its teachings. Finding the plaintiff's objections to be "concededly religious in nature," the Supreme Judicial Court of Massachusetts found the statutory exemption to violate both the free exercise and equal protection clauses by according preferred treatment to some religious beliefs while denying it to others. 358 Mass. at 759, 267 N.E.2d at 222. Obviously, Plaintiff's challenge to the Ohio statute is not based upon the distinction deemed impermissible in *Dalli,* nor is the rule of law enunciated in *Dalli* equally applicable to the facts of the instant case.

### V. *Conclusion*

For the reasons aforesaid, this Court overrules Plaintiffs' Motion for Summary Judgment, and declines to enter a declaration either as to the unconstitutionality of the challenged statutes and practices or as to the proper determination of what constitutes "good cause" under Ohio Rev.Code § 3313.671(A)(3). Defendant's Motion for Summary Judgment is sustained. The order of this Court, reminding Defendant of the stipulation by Defendant that Plaintiffs' children may remain in school without the required vaccinations, is of no further effect.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court, Southern District of Ohio, Western Division, at Dayton.