NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| LADY DONNA DUTCHESS, | ) | |
| | ) | Supreme Court No. S-18109 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-08063 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| JASON DUTCH, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1880 – March 9, 2022 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Lady Donna Dutchess, pro se, Anchorage, Appellant. No appearance by Appellee Jason Dutch.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

Divorced parents disagree about vaccinating their two minor children. The father wants to vaccinate the children per their pediatrician's recommendation. The mother objects on religious grounds to vaccinating the children. Given this disagreement, the father moved for sole legal custody of the children. After briefing and multiple hearings, the superior court issued an order granting decision-making authority concerning vaccinating the children to the father, and the mother appeals. Because the

---

\*      Entered under Alaska Appellate Rule 214.

superior court's best interests determination was supported by the record and within the court's broad discretion, we affirm.

## II.    FACTS AND PROCEEDINGS

Lady Donna Dutchess and Jason Dutch were married from 2008 to 2015. They have two children, both of whom still are minors. Both parents have been involved with the children's medical care. During the marriage, both children received vaccinations. After the marriage ended, neither child received vaccinations until 2021. The children's pediatrician recommended vaccinations in December 2020, but the father declined because "he and mother have not been able to agree on vaccinations." The mother objects to vaccinations on religious grounds.

Amid various disagreements regarding custody, the father filed a motion to modify legal and physical custody and raised the vaccination issue. The superior court held an evidentiary hearing on the matter in November 2020. At the conclusion of the hearing, the court noted that it was taking the vaccination question under advisement and would issue a future order.

In April 2021, prior to the court issuing its order, the father took the children to their pediatrician for vaccinations. In a subsequent hearing, the father explained that he feared his children may have been exposed to tetanus, and noted that he had the doctor give the children only "the most important" vaccines. The younger child received vaccines for hepatitis A; measles, mumps, and rubella; polio; and tetanus, diphtheria, and acellular pertussis. The older child received vaccines for hepatitis A; human papillomavirus (HPV); meningococcal disease; and tetanus, diphtheria, and acellular pertussis.

The superior court issued an order in June 2021 granting the father sole legal custody with regard to vaccination decisions. The order provided that "Father is to confer with Mother [regarding vaccinations]. If there is a disagreement then Father

makes the legal decision." The court recognized that the mother has "a [c]onstitutional right to practice her religion" but stated that religious liberty may be curtailed to protect a child's well-being, and specified that "[t]here are health benefits to having children vaccinated." The court quoted language from the United States Supreme Court's decision in *Prince v. Massachusetts*: "[t]he right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death."[1] The mother appeals, alleging violations of the free exercise clause, procedural due process, and various statutes.

## III. STANDARD OF REVIEW

"We . . . review constitutional questions de novo, adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[2] "Likewise, '[w]hether the court applied the correct standard in a custody determination is a question of law we review de novo.' "[3]

Trial courts have "broad discretion in child custody matters."[4] We "will reverse a trial court's resolution of custody issues only if [we are] convinced that the record shows an abuse of discretion or if controlling factual findings are clearly

---

[1]    321 U.S. 158, 166-67 (1944).

[2]    *Ross v. Bauman*, 353 P.3d 816, 823 (Alaska 2015) (alteration in original) (quoting *Skinner v. Hagberg*, 183 P.3d 486, 489 (Alaska 2008)).

[3]    *Osterkamp v. Stiles*, 235 P.3d 178, 184 (Alaska 2010) (alteration in original) (quoting *Elton H. v. Naomi R.*, 119 P.3d 969, 973 (Alaska 2005)).

[4]    *Farrell v. Farrell*, 819 P.2d 896, 898 (Alaska 1991).

erroneous."[5] Abuse of discretion includes instances when "the trial court considered improper factors or failed to consider statutorily-mandated factors, or improperly weighted certain factors in making its determination."[6]

## IV. DISCUSSION

Alaska Statute 25.24.150(c) requires courts to make custody award determinations and modifications in "the best interests of the child," considering, among other things, "the physical, emotional, mental, religious, and social needs of the child" and "the capability and desire of each parent to meet these needs." Here the superior court awarded authority to make vaccination decisions to the father based on the factual determination that it was in the best interests of the children. We review this factual determination for clear error.[7]

The record in this case supports the superior court's finding that granting the father the authority to make vaccination decisions served the children's best interests. The children's pediatrician documented that she "[d]iscussed with father vaccine indications and benefits" and "that not vaccinating his child could result in severe illness, disability and even death." The father testified that he had the children vaccinated because he was concerned about a possible tetanus exposure and that he had the pediatrician administer only the vaccines she felt were "most important." Given the pediatrician's recommendations to vaccinate the children, and the father's willingness to consider those recommendations, the court did not clearly err in its best interests

---

[5]     *Id.*

[6]     *Id.*

[7]     *Id.*

determination.[8]

The mother argues that the court's award of decision-making authority infringes on her right to the free exercise of religion under the U.S. and Alaska Constitutions.[9] When confronting free exercise claims under the Alaska Constitution, we typically apply the framework outlined in *Frank v. State*:[10] that when faced with a neutral law and with sincerely held religious beliefs compelling actions counter to that law, the State may only forbid these actions " 'where they pose some substantial threat to public safety, peace or order,' or where there are competing governmental interests 'of the highest order . . . not otherwise served.' "[11] We are not convinced that heightened scrutiny necessarily applies to child custody determinations allocating decision-making authority between parents, nor did the parties brief this issue. We note that several other state courts have concluded that strict scrutiny does not apply to a custody determination between parents with divergent religious convictions.[12] In *Bonjour v. Bonjour* we

---

[8] *See, e.g.*, *Shea v. Metcalf*, 712 A.2d 887, 891-92 (Vt. 1998) (affirming decision awarding medical decision-making authority to a father who wanted his children vaccinated when a board-certified pediatrician testified in support of the father's position); *In re A.J.E.*, 372 S.W.3d 696, 699 -700 (Tex. App. 2012) (relying on a court-appointed physician's advice when there was a dispute between parents over vaccinating the children).

[9] U.S. Const. amend. I; Alaska Const. art. I § 4.

[10] 604 P.2d 1068 (Alaska 1979).

[11] *Swanner v. Anchorage Equal Rts. Comm'n*, 874 P.2d 274, 281 (Alaska 1994) (quoting *Seward Chapel, Inc. v. City of Seward*, 655 P.2d 1293, 1301 n.33 (Alaska 1982)).

[12] *E.g.*, *In re Kurowski*, 20 A.3d 306, 317 (N.H. 2011) (explaining that a custody decision "is not subject to strict scrutiny review merely because the case involves the fundamental parental right . . . and the parents' divergent religious
(continued...)

addressed a parent's establishment clause claim, explaining that courts generally must maintain neutrality toward parents' religious beliefs or lack thereof when analyzing children's best interests and making a custody determination.[13] We recognized that a court's application of custody statutes in a manner exhibiting "a preference for the religious over the less religious" would essentially place "government on the side of organized religion, a non-secular result that the establishment clause is designed to prevent."[14] Consistent with our analysis in *Bonjour*, the superior court here properly considered how the mother's desire not to vaccinate the children was contrary to the recommendation of the children's pediatrician and counter to their best interests.[15]

Because the father is not participating in the appeal and thus does not challenge the legal framework applied by the superior court, we need not decide whether heightened scrutiny applies in this case. Even if we were to apply heightened scrutiny

---

[12]    (...continued)
convictions"); *In re Marriage of Crouch*, 490 P.3d 1087, 1092 (Colo. App. 2021) ("Indeed, [Colorado precedent] expressly rejects the need for strict scrutiny, and therefore the need to show substantial harm, when allocating decision-making responsibility between the child's parents because, in that context, the court is merely expanding one parent's fundamental right at the expense of the other parent's similar right."); *Morgan v. Morgan*, 964 So. 2d 24, 31 (Ala. Civ. App. 2007) ("[A] court may apply the best-interests standard in a custody dispute between such parents without implicating the Fourteenth Amendment due-process rights of either parent.").

[13]    592 P.2d 1233, 1241 (Alaska 1979) ("The establishment clause focuses judicial attention . . . in an effort to determine if the 'religious' is somehow being preferred over the non-religious, or anti-religious.").

[14]    *Id.* at 1243.

[15]    *Id.* at 1240-41 (stating that consideration of religiously motivated beliefs are appropriate when they impact the "actual religious needs" of the child, substantially threaten or result in "actual physical, emotion[al] or mental injury to the child," or "otherwise have a harmful effect on the child in violation of valid state statutes").

pursuant to *Frank v. State* in analyzing the mother's free exercise challenge, the superior court's ruling would withstand review. The State has "an undeniably compelling interest in protecting the health of minors."[16] Other jurisdictions ruling on vaccine mandates have more specifically held that protecting the health of individuals and the community is a compelling government interest.[17] Because the State has an interest of the highest order in protecting the children's health that, given the evidence in this case, would not be served by awarding the mother legal authority to make vaccination decisions, the superior court's ruling withstands the *Frank* analysis.[18]

Similarly, even if we applied strict scrutiny to the mother's federal constitutional claim, the decision would withstand review. Strict scrutiny requires a compelling government interest and that the government action be narrowly tailored to

---

[16] *State v. Planned Parenthood of Alaska*, 171 P.3d 577, 579 (Alaska 2007).

[17] *See Brown v. Stone*, 378 So. 2d 218, 222 (Miss. 1979); *Wright v. DeWitt Sch. Dist. No. 1 of Ark. Cnty.*, 385 S.W.2d 644, 648 (Ark. 1965); *Whitlow v. California*, 203 F. Supp. 3d 1079, 1089-90 (S.D. Cal. 2016) ("There is no question that society has a compelling interest in fighting the spread of contagious diseases through mandatory vaccination of school-aged children. All courts, state and federal, have so held either explicitly or implicitly for over a century."); *Shepp v. Shepp*, 906 A.2d 1165, 1173 (Pa. 2006) (explaining that the state has a compelling interest to protect a child from threats to the child's welfare); *Roberts v. Roberts*, 586 S.E.2d 290, 295 (Va. App. 2003) ("[T]he protection of children from harm, whether moral, emotional, mental, or physical, is a valid and compelling state interest." (alteration in original) (quoting *Knox v. Lynchburg Div. of Soc. Serv.*, 288 S.E.2d 399, 404 (Va. 1982))).

[18] *In re Tiffany O.*, 467 P.3d 1076, 1082 (Alaska 2020) (noting that where former guardian would not obtain medical care for her ward due to religion, granting guardian a religious exemption would be contrary to the State's interest in "protecting its most vulnerable citizens from harm"), *cert. denied*, 141 S. Ct. 1096 (2021) .

advance that interest.[19] As we have explained above, the State has a compelling interest in maintaining the health of minors.[20] Further, the superior court's order in this case was extremely narrowly tailored. The court did not award full custody, sole legal custody, or even all medical decision-making authority to one parent. Rather, the court limited the scope of its order to authority to make vaccination decisions. This is the least restrictive means of achieving the State's interest in protecting the health of the children.[21]

In addition to her constitutional challenges, the mother appears to allege that bias on the part of the superior court judge violated her due process rights. Parties have a fundamental due process right to an impartial decision-maker.[22] In determining whether a judge's conduct creates "an appearance of partiality" requiring disqualification, we consider "whether the totality of the circumstances 'would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.' "[23]

---

[19]    *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32 (1993).

[20]    *Planned Parenthood of Alaska*, 171 P.3d at 579.

[21]    *See Roberts*, 586 S.E.2d at 295-96 (finding that remedy found advanced "the compelling state interest in protecting the children in the least restrictive effective manner").

[22]    *Amerada Hess Pipeline Corp. v. Alaska Pub. Utils. Comm'n*, 711 P.2d 1170, 1180 (Alaska 1986).

[23]    *Vent v. State*, 288 P.3d 752, 756-57 (Alaska App. 2012) (quoting *State v. Dussault*, 245 P.3d 436, 442 (Alaska App. 2011)).

The mother did not argue this point before the trial court,[24] and she has not pointed to any persuasive evidence of partiality. Indeed, the superior court judge seemed to take pains to respect the mother's religious beliefs and accurately and carefully assess her parenting ability. The superior court explained that it would need to research the appropriate balance "between protecting [the mother's] constitutional rights to religious freedom and as it pertains to her children, and [the father's] right to have his children protected through vaccination." The court further noted that it "want[ed] to commend both of you[,] . . . [because] you . . . have come a long ways . . . to learn to co-parent. And I think your kids are benefiting from it." The totality of the circumstances demonstrates that the superior court judge acted impartially throughout the proceedings.

The mother's additional statutory arguments are unavailing. They are either

---

[24] Because the mother did not raise the issue at the trial court, we review the record for plain error. *State Farm Auto Ins. Co. v. Raymer*, 977 P.2d 706, 711 (Alaska 1999); *Wylie v. State*, 797 P.2d 651, 662 (Alaska App. 1990) (noting that the defendant argued that there was an appearance of impropriety for the first time on appeal, and finding no plain error).

irrelevant,[25] waived,[26] or without legal basis.[27]

Given the record in this case, the superior court did not clearly err in finding that an award of legal authority for vaccination decisions to the father would serve the children's best interests, and did not abuse its discretion in making its corresponding order on legal custody. The mother's objections fail, even if this court were to apply heightened scrutiny.

---

[25] The mother asserts that by awarding vaccine decision-making to the father, the superior court violated the regulation governing vaccine requirements for children prior to their admission to school, citing 4 Alaska Administrative Code (AAC) 06.055(f) (2018). The regulation provides an exception if the child "has an affidavit signed by his parent or guardian affirming that immunization conflicts with the tenets and practices of the church or religious denomination of which the applicant is a member." 4 AAC 06.055(b)(3). This regulation addresses admission to school, not internal family decision-making. It does not bar one parent vaccinating their child over the objection of another parent. Therefore, it does not apply in this situation. *Cf. Ward v. Lutheran Hosps. & Homes Soc'y of Am., Inc.*, 963 P.2d 1031, 1036 (Alaska 1998) (noting that when regulations do not mention informed consent, there is no cause of action relating to informed consent).

[26] The mother argues that the superior court "erred in continuing to allow the intentional interference" with constitutional rights, in violation of AS 11.76.110 and 18 U.S.C. § 242, but this argument fails. The mother has waived this argument for failure to raise it before the trial court and failure to adequately brief the issue on appeal. *Williams v. Alyeska Pipeline Serv. Co.*, 650 P.2d 343, 351 (Alaska 1982); *Pieper v. Musarra*, 956 P.2d 444, 446-47 (Alaska 1998).

[27] The mother's arguments pursuant to AS 11.76.110 and 18 U.S.C. § 242 also fail because neither provides a private cause of action. *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1015 (Alaska 1999) ("Alaska's criminal statute prohibiting interference with a constitutional right . . . does not itself imply a purely private cause of action."); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985) (explaining that 18 U.S.C. § 242 does not carry a private right of action); *Weiland v. Byrne*, 392 F. Supp. 21, 22 (N.D. Ill. 1975) ("The plaintiff cites certain criminal statutes in his complaint, under which he has no standing to sue.").

## V.    CONCLUSION

We AFFIRM the superior court's order awarding legal authority to make vaccination decisions to the father.