CLONLARA, INC., John and Sandra
Bennett, Leonard and Julia
Kuhar, Plaintiffs,

v.

Phillip RUNKEL, (Superintendent of Public Instruction), James H. Doyle, (Superintendent, Huron Valley Schools), James Faust (Pupil Personnel Officer, Huron Valley Schools), Huron Valley School Board of Education, John M. Hoben (Superintendent, Plymouth–Canton Schools), Shirley Waters (Pupil Personnel Officer, Plymouth–Canton Community Schools), Plymouth–Canton Board of Education; Michigan Association of School Adminis-

---

trators; Michigan Pupil Accounting and Attendance Association, Defendants.

Civ. A. No. 86–75439.

United States District Court,
E.D. Michigan, S.D.

July 18, 1989.

Kurt Berggren, Ann Arbor, Mich., for Clonlara, Inc., John and Sandra Bennett and Leonard and Julia Kuhar.

Paul J. Zimmer, Asst. Atty. Gen., Lansing, Mich., for Phillip Runkel, Super. of Public Instruction.

John A. Klarr, Southfield, Mich., for James H. Doyle, Super. of Huron Valley Schools, James Faust, Pupil Personnel Officer, Huron Valley Schools and Huron Valley Schools Bd. of Educ.

Anthony Kenney, Detroit, Mich., for John Hoben, Super. of Plymouth–Canton Schools, Shirley Waters, Pupil Personnel Officer, Plymouth–Canton Schools, Plymouth–Canton Schools Bd. of Educ.

Thomas H. Blaske, Ann Arbor, Mich., for Michigan Ass'n of School Administrators.

Joan M. Fencik, Chicago, Ill., for Michigan Assoc. of School Administrators.

Joe Mosier, Lansing, Mich., for Michigan Pupil Accounting and Attendance Ass'n.

## MEMORANDUM OPINION AND ORDER

FRIEDMAN, District Judge.

This matter is before the court on Magistrate Virginia M. Morgan's Report dated June 9, 1989, and specific recommendations dated the same date. Plaintiff has filed timely objections and defendant Phillip Runkel has filed responses to said objections. The plaintiffs' objections essentially argue the scope of the recommended relief as opposed to the substance.

The court is very familiar with the issues raised in this matter as well as the positions of the parties. The court has had an opportunity to thoroughly review the Report and Recommendation of Magistrate Morgan.

The court's review of the Report and Recommendation and the law in this particular matter indicates that Magistrate Morgan reached the proper conclusions in her Report and Recommendation and the court shall therefore accept and adopt the magistrate's Report and Recommendation.

Accordingly,

IT IS HEREBY ORDERED that the motion and amended motion by Phillip Runkel to dismiss and/or for summary judgment on plaintiff's first amended complaint is granted.

IT IS FURTHER ORDERED that the motion by MASA to dismiss and for summary judgment is granted.

IT IS FURTHER ORDERED that the motions by MPAAA to dismiss and for summary judgment are granted.

IT IS FURTHER ORDERED that motions by plaintiffs for summary judgment and alternatively for opportunity to do discovery and file an amended complaint are denied.

IT IS FURTHER ORDERED that the motion for summary judgment by defendants Huron Valley Schools, James Doyle, James Faust, John Hoben, Shirley Waters, and Plymouth–Canton Community Schools is granted.

## JUDGMENT

In accordance with the Memorandum Opinion and Order accepting Magistrate's Report and Recommendation entered this date,

IT IS HEREBY ORDERED that the motion and amended motion by Phillip Runkel to dismiss and/or for summary judgment on plaintiff's first amended complaint is granted.

IT IS FURTHER ORDERED that the motion by MASA to dismiss and for summary judgment is granted.

IT IS FURTHER ORDERED that the motions by MPAAA to dismiss and for summary judgment are granted.

IT IS FURTHER ORDERED that motions by plaintiffs for summary judgment and alternatively for opportunity to do discovery and file an amended complaint are denied.

IT IS FURTHER ORDERED that the motion for summary judgment by defendants Huron Valley Schools, James Doyle, James Faust, John Hoben, Shirley Waters, and Plymouth–Canton Community Schools is granted.

## MAGISTRATE'S REPORT

June 9, 1989

VIRGINIA M. MORGAN, United States Magistrate.

### I.

### STATEMENT OF THE CASE

This case is a federal civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, 1986 alleging a deprivation of the right to educate one's children in the privacy of the home, a denial of due process, and a conspiracy to violate civil rights. Plaintiffs allege that they have a "fundamental right to privacy, protected by the due process clause of the fourteenth amendment, which includes a right to raise, nurture and control the education and upbringing of their children." (Complaint, ¶ 86). Plaintiffs have also alleged various state claims. The individual plaintiffs, John and Sandra Bennett, and Leonard and Julia Kuhar, are

parents who were prosecuted on the criminal charge of truancy. In defense, the parents alleged that they were educating their children at home using a "Home Based Education Program" (HBEP) purchased from Clonlara, Inc. (Clonlara). They claim here that the criminal prosecution is a denial of due process "because the statutes provide no clear and ascertainable standard by which to differentiate between criminal and non-criminal behavior in the context of home education." (Complaint, ¶ 96).

Clonlara, Inc., the corporate plaintiff, is a private school in Ann Arbor, Michigan. Clonlara sells HBEP packages to parents interested in educating their children at home. Clonlara also offers an on-site private day school in Ann Arbor where students attend class at the institution.

Plaintiffs initiated this suit on June 20, 1986 and filed their amended complaint November 2, 1987. Plaintiffs' amended complaint names nine defendants and sets forth eight causes of action, five of which are state law claims.

Currently pending before the court are the following motions:

1. Motion by Phillip Runkel to Dismiss Plaintiffs' First Amended Complaint filed December 14, 1987;

2. Motion by Defendant Michigan Association of School Administrators (MASA) to Dismiss filed December 16, 1987;

3. Motion by Defendant Michigan Pupil Accounting and Attendance Association (MPAAA) to Dismiss for Failure to State a Claim filed December 23, 1987;

4. Motion by Plaintiffs for Summary Judgment and Alternatively for an Opportunity to do Discovery and File an Amended Complaint filed October 14, 1988;

5. Motion by Defendant Michigan Association of School Administrators

(MASA) for Summary Judgment filed October 17, 1988;

6. Motion (Amended) by Defendant Phillip Runkel for Dismissal and/or Summary Judgment filed October 17, 1988;

7. Motion by Defendants Huron Valley Schools, James Doyle, James Faust, John M. Hoben, Shirley Waters and Plymouth–Canton Community Schools for Summary Judgment filed October 17, 1988;

8. Motion by Defendant Michigan Pupil Accounting and Attendance Association (MPAAA) for Summary Judgment filed October 17, 1988;

These motions have been fully briefed by the parties. Oral argument was scheduled. However, at the scheduled time for argument, counsel waived formal argument on the motions. Instead, the parties addressed specific questions posed by the court. All of the above-listed motions have been referred for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Since the motions are overlapping and repetitive, the recommendation will address the parties' contentions in the outline of the claims themselves.

## II.

### SUMMARY OF FACTS

The facts as alleged in plaintiffs' first amended complaint are as follows: Clonlara began its HBEP in 1979 and notified the "appropriate State authorities." Since 1985, three families, the Gibsons,[1] the Bennetts and the Kuhars have been prosecuted for truancy. These three families were using Clonlara's HBEP to educate their children. Clonlara alleges that since 1985 thirty of its HBEP customers have been harassed by school district pupil personnel officers. The officers and the customers are unidentified. Three unidentified parents have allegedly discontinued enrollment in Clonlara's HBEP program and other unidentified families have allegedly been dis-

---

1. The Gibsons were named as plaintiffs in the original complaint, but on September 15, 1987, stipulated to a dismissal with prejudice of all their claims. They were not named in the first amended complaint.

couraged from enrolling in the program. No affidavits have been submitted from any parents including the Bennetts and the Kuhars.

In September of 1985, the Bennetts were contacted by Shirley Waters, the attendance supervisor in the division of pupil personnel services of Plymouth–Canton Community Schools (PCCS). Waters sought information concerning the Bennetts' children's educational instruction.

Following several months of correspondence between Waters and the Bennetts, on May 8, 1986, the Bennetts were charged with four counts of truancy in violation of Michigan Compiled Laws Annotated (MCLA) § 380.1599. After a bench trial on January 12 and 13, 1987, both the Bennetts were convicted of four counts of truancy. The Bennetts have appealed their convictions, and the cases are presently pending before the Michigan Court of Appeals.

The Kuhars, during the time in question in this suit, also resided in PCCS district. In April of 1985, Hoben, superintendent for PCCS, contacted the Kuhars. He told them that if their home school program did not meet curriculum requirements, truancy prosecution might be initiated. On April 25, following some correspondence, Hoben indicated that he would not certify the Kuhars' home curriculum as comparable. In June 1985, Waters wrote Kuhars seeking evidence that the Kuhars' child had received 180 days of certified teacher instruction. In December 1985, Waters wrote the Kuhars stating that their child needed to be at a public school or in a state approved non-public school. Julia Kuhar apparently was, at one time, a certified teacher but her certification had lapsed. In March 1986, Waters initiated truancy charges as the complaining witness. The Kuhars were arraigned on those truancy charges. These charges were dismissed on August 8, 1988, after Julia Kuhar was recertified. A true copy of the dismissal has been submitted to this court. Plaintiffs allege that actual or threatened prosecution of any home schooler for truancy violates due process because the rules and regulations governing home schools are vague and incomprehensible.

The amended complaint also alleges that Hoben and Waters have made statements to newspapers regarding their dislike of home based education. Plaintiffs allege that the Michigan Association of School Administrators (MASA) of which Hoben is a member, and the Michigan Pupil Accounting and Attendance Association (MPAAA), of which Waters is a member, have taken positions and authored documents expressing a hostility toward home based schools.

Plaintiffs further allege that, because MPAAA and MASA are composed of state employees, who belong to these organizations as a result of their jobs, MASA's and MPAAA's actions are "state action" for the purposes of 42 U.S.C. § 1983.

## III.

### APPLICABLE STANDARD OF REVIEW

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the Supreme Court's recent decision in *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), provides guidance. The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of plaintiff's case. *Id.* 477 U.S. at 326, 106 S.Ct. at 2554. Instead the Court said, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue

for trial. *Id.;* see also, *Roby v. Center Companies,* 679 F.Supp. 664 (E.D.Mich. 1987).

In reviewing the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), the court must construe the complaint liberally in plaintiff's favor and accept as true all factual allegations and permissible inferences therein. *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). Dismissals of complaints under the civil rights statutes are scrutinized with special care, *Brooks v. Seiter,* 779 F.2d 1177, 1180 (6th Cir.1985). A rule 12(b)(6) motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

## IV.

## PLAINTIFFS' MOTION TO EXTEND DISCOVERY AND TO THEN FILE AN AMENDED COMPLAINT

Before reaching the merits of the motions to dismiss and for summary judgment, the court must first address plaintiffs' request to extend discovery and then to file an amended complaint. Plaintiffs do not seek to file an amended complaint now. Specifically, "the plaintiffs request the opportunity to do discovery and to file an amended complaint pursuant to Rule 15, if such is determined to be necessary after discovery." Plaintiffs' Motion for Summary Judgment, Pg. 3 (filed 10/14/88).

Plaintiffs' request for a further opportunity to conduct discovery must be treated as a motion pursuant to F.R.Civ.P. Rule 6(b)(2) for an enlargement of time. Under Rule 6, a movant must show that the failure to do the act in the time proscribed was the result of excusable neglect. No such showing has been made by plaintiffs.

This case was filed on June 20, 1986. The first scheduling order was entered August 19, 1986 and set the close of discovery for June 1, 1987. The scheduling order was amended on July 9, 1987, and discovery was extended until December 1, 1987. On January 6, 1988, the scheduling order was again amended and discovery was extended until June 1, 1988. On April 26, 1988, discovery was further extended until October 1, 1988.

Plaintiffs' counsel alleges that he was unaware of the October 1, 1988 discovery cut-off date and that he has had no opportunity to conduct discovery.

Plaintiffs' current counsel, Kurt Berggren, filed his appearance on April 29, 1988. He, by way of affidavit, states that he received from previous counsel what was allegedly a complete file and that it did not contain a copy of the April 26, 1988 scheduling order. Plaintiffs' counsel also alleges that he was unable to take any depositions because defendants refused to allow depositions of defendants until the deposition of Pat Montgomery, director of Clonlara School, was completed. Montgomery's deposition was not completed until October, 1988.

The court is unpersuaded that either of the above shows excusable neglect. It was counsel's obligation to ascertain all pertinent deadlines. Even if the April 1988 scheduling order was not in the file, one of the scheduling orders, which contained earlier discovery cut-off dates should have been. These should have alerted counsel to impending deadlines. Further, counsel is an experienced attorney who should know that courts enter scheduling orders and should have made an effort to ascertain pertinent dates.

Counsel had five months from April to October 1, 1988 in which to conduct discovery. Plaintiffs' allegations that they could not take depositions and that Montgomery's deposition was being used as harassment are without merit. If plaintiffs wanted to proceed with depositions, it was their obligation to notice depositions pursuant to the Federal Rules. No notices were filed. Also, if Montgomery's deposition was harassing, counsel should have moved for a protective order pursuant to F.R. Civ.P. 26(c) and 30(d).

Plaintiffs have failed to show anything which approaches excusable neglect for their failure to conduct discovery. Plaintiffs had over two years to undertake discovery. Even if depositions were somehow precluded, plaintiffs had ample opportunities to send interrogatories and/or document requests and to interview their own witnesses. Plaintiffs have failed even to submit statements from the Bennetts or Kuhars. No good cause is shown to allow additional time for discovery.

■ Plaintiffs' conditional request to file an amended complaint likewise must be denied. Federal Rule Civil Procedure 15(a) requires that amendments are to be made by leave of court and leave shall be freely granted when justice so requires.

However, plaintiffs' request fails in two ways. First, plaintiffs do not, at this time, actually seek to amend their complaint. They have asked to do more discovery, and then maybe, after the discovery, to file an amended complaint. Plaintiffs seek to reserve the right to file an amended complaint at some later time, if they so choose. The court cannot grant such a conditional request for future relief.

Plaintiffs have also failed to present a copy of the proposed amended complaint.[2] Substantial case law authority supports the proposition that a copy of the proposed amended pleading must be submitted with the motion for leave to amend. See, *Clayton v. White Hall School District,* 778 F.2d 457, 460 (8th Cir.1985); *Wolgin v. Simon,* 722 F.2d 389 (8th Cir.1983); *Nation v. United States,* 512 F.Supp. 121 (S.D.Ohio 1981); and *Bownes v. City of Gary,* 112 F.R.D. 424 (N.D.Ind.1986). Without the proposed amendment, it is impossible to determine whether justice requires that the amendment be granted.

Further, the factors which are to be weighed in deciding whether to allow the amendment cannot be judged without reference to the proposed charges. A court is required to address the prejudice to the

party opposing the amendment, *Zenith Radio Company v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971), and must account for the movant's delay in seeking leave to amend. *Minor v. Northville Public Schools,* 605 F.Supp. 1185 (E.D.Mich.1985). The reasons for delay must be weighed against the potential prejudice. *Minor,* 605 F.Supp. at 1185. A court need not grant the amendment if it is futile. *Glick v. Koenig,* 766 F.2d 265 (7th Cir.1985). Without the proposed amendment, a court cannot ascertain the reason for the delay, the likely prejudice or whether the amendment would be futile.

Because plaintiffs' request to amend has not been presented to the court in a manner which would allow a meaningful and just resolution to be made, it should be denied.

V.

JURISDICTIONAL CONSIDERATIONS

Before addressing the merits of plaintiffs' claims, certain jurisdictional considerations should be reviewed.

A. *Clonlara's Standing*

■ Clonlara alleges that it has standing as an association to seek redress for its own injuries, and also standing to seek redress injuries to its members.

Federal courts have power to hear and decide only that which is authorized by Article III of the Constitution and the statutes enacted by Congress. *Bender v. Williamsport Area School District,* 475 U.S. 534, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). In cases raising constitutional questions, the standing requirements of Article III must be strictly applied. *Id.*

At the minimum Article III requires: "the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone Re-*

2. Plaintiffs refer to an eighteen page letter submitted to the court which outlines the theory of plaintiffs' claims. This is not plaintiffs' proposed amended complaint. The letter and its lengthy attachments focus on advocating the merits of home schooling, an issue not before the court.

*altors v. Village of Bellwood*, 441 U.S. [91,99 (99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979)), and the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.* 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976) ..."

*Bender*, 106 S.Ct. at 1332 (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 102 S.Ct. 752, 758–59, 70 L.Ed.2d 700 (1982).

Beyond these constitutional requirements, there are also prudential limits. Wright, Miller & Cooper, *Federal Practice and Procedure:* Jurisdiction 2d § 3531.2. A plaintiff generally cannot rely on the legal rights and interests of third parties and the plaintiff's complaint must fall within the zone of interest arguably protected by the constitutional provision in question. *Id.*

As the party seeking to invoke this court's jurisdiction, Clonlara has the burden of affirmatively demonstrating that jurisdiction is proper. *Bender*, 106 S.Ct. at 1334 n. 8. The factual predicate for jurisdiction must be demonstrated from the record. *Bender*, 106 S.Ct. at 1334. It is not "sufficient that jurisdiction may be inferred argumentatively from averments in the pleadings." *Grace v. American Central Ins. Co.* 109 U.S. 278, 3 S.Ct. 207, 27 L.Ed. 932 (1883) (cited with approval in *Bender*, 106 S.Ct. at 1334). Whether at the appellate or trial stage, "the necessary factual predicate may not be gleaned from the briefs and arguments themselves." *Bender*, 106 S.Ct. at 1334. Clonlara's standing must be shown in the facts on the record and may not be inferred.

Clonlara has not clearly stated its basis for standing. The court has ascertained three alternative theories under which Clonlara may have standing. They are (1) as an economic actor injured by loss of business, (2) as an association, and (3) as a third party representing the interests of others, which is also known as *jus terti* standing.

Clonlara can be viewed as a business which provides a service to parents who wish to educate their children at home. Clonlara charges a fee to parents with a curriculum for home education, a record-keeping service, and information about state rules and regulations governing home schooling. See HBEP Flyer attached to Motion to Dismiss by MASA, and to Plaintiffs' Letter to Court which was incorporated into Plaintiffs' Motion for Summary Judgment. However, there is nothing in the record to show that Clonlara has been economically injured, despite the fact that Clonlara itself has moved for summary judgment as to all claims. Pat Montgomery, in paragraph 11 of her affidavit dated November 3, 1988, stated that numerous families dropped out of the HBEP program because of defendants' actions. She states that these parents told Clonlara staff that they were afraid because of defendants' actions. This is not competent evidence under F.R.Civ.P. 56(e) because such hearsay evidence would not be admissible at trial. It is Clonlara who must, by a factual record, demonstrate a distinct and palpable injury. *Meese v. Keene*, 481 U.S. 465, 107 S.Ct. 1862, 1866–67, 95 L.Ed.2d 415 (1987). Neither Clonlara's allegations nor the facts of record, demonstrate an economic business injury. Therefore, it has shown no standing under this theory.

Clonlara argues that it has standing to assert the rights of its "members." Even in the absence of injury to itself, an association may have standing solely as the representative of its members. *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 2211, 45 L.Ed.2d 343 (1975). The association must allege that at least one of its members has been injured or is threatened with injury. 95 S.Ct. at 2212.

An association has standing to assert the rights of its members where the following conditions are met:

(a) Its members would otherwise have standing to sue in their own right;

(b) The interests it seeks to protect are germane to the organization's purpose; and

(c) Neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington State Apple Advertising Comm.,* 432 U.S. 333, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

In *Hunt,* the Supreme Court was concerned with the issue of whether the Commission's status as a state agency, rather than a traditional voluntary membership organization prevented it from asserting associational standing. *Id.* 97 S.Ct. at 2442. The Court found that the Commission had standing to assert the apple growers' rights because of the following:

(1) The Commission, although a state agency, performed the function of traditional trade association; and

(2) The apple growers possessed all the indicia of membership in a trade association.

*Hunt,* 97 S.Ct. at 2442.

Such is not the case here. Clonlara is a not-for-profit private school which also provides, for a fee, services to parents interested in home based education. Essentially, Clonlara sells a service. There has been no showing that Clonlara acts as a traditional trade organization or that its particular purpose is to promote home based education. Pat Montgomery asserts an interest in promoting home schooling but no evidence has been presented to show that Clonlara, as an association, promotes home education.

Further, and perhaps more important, is the status of so-called "members" of Clonlara. The parents merely purchase a service from Clonlara; they are customers. It has not been pled or proven that the parents elect members of a board for Clonlara; that only parents (members) could be its board members; or that the members finance its activities including the costs of this lawsuit. It does not even appear that these parents have input into the management of Clonlara in *any* fashion. There has been no showing that parents who believe in homeschooling join together as 'Clonlara' to protect and advocate their position. See, *Hunt,* 97 S.Ct. at 2442. Thus,

the factors which were identified as significant by the court in allowing the Commission standing are not present here.

In *Hunt,* the Court warned that form should not be exalted over substance when determining associational standing. *Id.* However, an examination of the substance here also fails to show any indicia that Clonlara is an organization of persons who have banded together to support home schooling, rather than merely a business and its customers. Clonlara, through its director and founder Dr. Montgomery, has expressed a strong interest in promoting home schooling. Nevertheless, Montgomery's personal interest does not transform her business into an organization which should be allowed standing to argue parental rights. Thus, standing should be denied on this ground.

Clonlara may also have *jus terti* standing, regardless of its organizational status, to assert the rights of the parents. See, generally, *Akron Center for Reproductive Health v. City of Akron,* 651 F.2d 1198, 1210 (6th Cir.1981). *Jus terti* standing can be divided into two categories. The first involves litigants who challenge regulations or laws which are applied to them, but which deprive third persons of constitutional rights. *Id.* at 1211. The second category involves litigants who suffer injuries because of regulations imposed directly on other persons which regulations impair those other persons' constitutional rights. Clonlara would be asserting this second type of *jus terti* standing.

Courts have sometimes granted *jus terti* standing. For example, two doctors who were performing abortions for their indigent patients were held to have standing to challenge a statute which denied Medicaid benefits for non-medically indicated abortions. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). The court cautioned, however, against allowing the mere assertion of a third person's rights to confer standing. 96 S.Ct. at 2874.

In determining whether to allow Clonlara to assert the rights of a third person (i.e. the parents), the court must make factual determinations concerning (1) the relation-

ship of the litigant to the person whose rights it seeks to assert; and (2) the ability of the third person to assert his own right. *Singleton,* 96 S.Ct. at 2874–75.

Here, the nature of the relationship does not favor Clonlara. In *Singleton,* the relationship of the litigant to the third party was one of a doctor to patient. 96 S.Ct. at 2874. See, also *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The Court emphasized the closeness and confidentiality of the relationship. Further, the Court noted that the activity the litigant sought to pursue was inextricably bound up with the exercise of the constitutional right. *Singleton,* 96 S.Ct. at 2874. The woman could not obtain an abortion without seeking the services of a doctor. 96 S.Ct. at 2875.

This case shows no close or confidential relationship between the parents and Clonlara, nor an inability of the parents to assert their rights. Clonlara's home school service appears to be provided largely through the mail. The parents' ability to direct the education of their children and to school their children at home is not dependent upon Clonlara. The parents need not purchase a HBEP in order to home school. Moreover, the parents, whose rights Clonlara seeks to assert, have shown the ability in both state and federal courts to assert their own rights.

Clonlara's reliance on *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) to confer standing is misplaced. *Pierce* granted standing for a direct injury. The private school was ordered closed by the state pursuant to a statute which required all children to attend public school. No such statute or direct injury is at issue here. The state has not attempted to close Clonlara's private school nor has it ordered that all students attend public school. The regulations for home school have only an indirect impact on Clonlara. Thus, Clonlara has not shown *jus terti* standing.

### B. *Abstention*

Suits involving some of the same parties are currently pending in state court. The Bennetts were prosecuted and convicted of a truancy charge. All parties agreed that the Bennett conviction is now on appeal to the Michigan Supreme Court. Also pending in state court is the case of *Clonlara, Inc., Robert and Cynthia Gibson, and Deborah McConnell v. Michigan State Board of Education, et al.,* 86–57566–CZ, in the Ingahm County Circuit Court. On February 14, 1989, the Honorable Thomas L. Brown entered an oral decision in that case granting the relief requested by plaintiffs.[3] Faced with these ongoing state proceedings, this court must decide whether abstention is appropriate for all or part of the case at bar.

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts should not enjoin pending state criminal proceedings begun prior to the institution of a federal suit except in very unusual circumstances. Under *Younger,* dismissal of the entire federal case is required. *Watts v. Burkhart,* 854 F.2d 839, 845 (6th Cir.1988).

The principles of *Younger* have also been held applicable where there are state civil and administrative proceedings, in which important state interests are involved and the federal plaintiff would have a full and fair opportunity to litigate his federal constitutional claim. *Ohio Civil Rights Commission v. Dayton Christian Schools,* 477 U.S. 619, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986).

In *Dayton Christian Schools,* the school sought an injunction preventing the Ohio Civil Rights Commission from pursuing administratively a charge of sex discrimination against the school. The Supreme Court held that the district court should have abstained, finding that remedying sex discrimination was an important state interest and that Dayton Christian Schools would have the opportunity to raise their

---

**3.** The injunctive relief granted in the case prevents the Michigan Board of Education from enforcing or utilizing the "Non–Public School and Home School Compliance Procedures" in any manner against any Michigan parent and declares same null and void.

constitutional claims in the state proceeding. 106 S.Ct. at 2723–24.

The nature of the relief sought (declaratory, injunctive or damages) is not dispositive of whether the abstention doctrine should be applied, although it does affect the manner of the application. *Feaster v. Miksch*, 846 F.2d 21, 24 (6th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 148, 102 L.Ed.2d 120 (1989). The test of whether to abstain is how disruptive a decision on the merits would be to the ongoing state proceeding. *Id.* at 24. Where a court must abstain from deciding an issue of damages, the proper course is to stay the proceeding. *Id.*

Here, the court should abstain from deciding the Bennetts' claims for injunctive and declaratory relief and they should be dismissed. Deciding them would intrude into the state criminal case. The claim for money damages should be stayed, because any decision in this forum would necessarily relate to the merits in state court. The Bennetts submit that their situation meets the exceptions to *Younger* and its progeny. They argue that abstention is not necessary where the state proceeding is pursued with an intent to harass, is conducted in bad faith or where the challenged action is flagrantly unconstitutional. *Watts*, 854 F.2d at 845. However, they have not offered any evidence to show that the above exceptions exist here. The criminal case was begun May, 1986, while the civil suit was not brought until June, 1986. Thus, it cannot be said that the criminal case was brought as harassment for the initiation of the civil case.

The Kuhars are not shown to be involved in any state court litigation, and so abstention does not apply to them. The state criminal charges against them were dismissed.

Accordingly, it is recommended that the court abstain with respect to the Bennetts, that the Kuhars be allowed to proceed on the merits, and that Clonlara be dismissed for lack of standing.

## VI.

## THE UNDERLYING MERITS OF THE § 1983 CLAIM [4]

In any Section 1983 action, the initial inquiry must focus on whether two essential elements are present: whether the conduct complained of was committed by a person acting under color of state law; and whether this conduct deprived the person of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Bacon v. Patera*, 772 F.2d 259, 263 (6th Cir.1985).

The scope of the § 1983 claims is not well delineated by either the first amended complaint or subsequent pleadings, although plaintiffs appear to claim that all defendants are responsible for all violations. Plaintiffs also allege that the actions of the defendants were taken under the color of state law. (Amended Complaint, ¶ 87).

The heart of this suit seems to be the nature and scope of the parents' right to control the education of their children. Plaintiffs allege that this is a fundamental right, and that this right is applicable to the state under the due process clause of the fourteenth amendment. Thus, any state regulation of this right must be done by the least restrictive means and there must be a compelling state interest to justify such intrusion. See, Nowak, Rotunda, and Young, *Constitutional Law* (3rd Ed. 1986) (hereinafter *Nowak*) § 10.6, p. 323.

Plaintiffs allege that the Michigan statutes and regulations currently governing homeschooling violate this right in the following ways:

1. The statute and regulations deprive Clonlara of liberty and property interests in its reputation as a state approved pri-

---

**4.** Under Count 1 of the complaint, plaintiffs fail to articulate that it is a claim brought pursuant to 42 U.S.C. § 1983. There is no direct cause of action under the fourteenth amendment and this court will treat this as being brought pursuant to § 1983.

vate school (First Amended Complaint ¶¶ 89–90);

2. Michigan law relating to homeschooling and truancy is void for vagueness;

3. Due process principles of neutrality are violated by allowing local school administrators who have a financial stake in compelling attendance to make decisions concerning truancy;

4. Requiring instruction by certified teachers violates the least restrictive means portion of the strict scrutiny test; and

5. Prosecuting homeschooling families in state court for educational neglect prior to any disapproval finding by administrative hearing under M.C.L.A. § 388.554 violates due process rights created by state law.

This five point statement of the claim is taken from plaintiffs' letter of September 30, 1988. This letter is not being used as an amended complaint and the court refers to it only as an aid in understanding this vaguely drafted complaint. Claims 3, 4 and 5 are not delineated in the first amended complaint.

Plaintiffs have failed, both in response to the outstanding motions for summary judgment and in support of their own motion for summary judgment to submit any affidavits except that of Pat Montgomery. No other documentation supporting the claims has been offered. The many articles attached as exhibits to plaintiffs' letter relate to whether homeschooling is worthwhile and efficacious, but that is not an issue in this lawsuit. Thus, they are not relevant to plaintiffs' action.

■ Claims 3, 4, 5 will not be discussed in this report as they are not properly before the Court. In Count 1 of the complaint the Kuhars allege that defendants' actions have deprived them of a fundamental right to school their children at home and that the statutes and regulations concerning home schooling are unconstitutionally vague. In their response to Defendant Runkel's motion to dismiss, they discuss only these two claims. It was not until the plaintiffs submitted a letter to the court dated September 30, 1988, and incorporated such letter into the motion for summary judgment, that the additional theories were set forth. At the scheduled oral argument, plaintiff's counsel argued that # 3, 4 and 5 these claims could fairly be inferred from the first amended complaint and that no further amendment was necessary to bring these claims properly before the court.

That argument is without merit. No proper amendment has been presented to this court. A close review of Count 1 of plaintiffs' complaint demonstrates that, even under the liberal notice pleadings requirement of F.R.Civ.P. Rule 8, it cannot be said to fairly raise the additional issues set forth in plaintiffs' September 30, 1988 position paper. Plaintiffs' position paper does not comply with either the letter or spirit of Judge Friedman's order requiring such a paper. Plaintiffs were to make substantial efforts to reduce the scope of the lawsuit both as to claims and defendants. Instead, plaintiffs expanded the scope of the lawsuit in terms of claims and continued to assert, without providing any details, that all defendants were somehow participants in all alleged wrongs.

Federal Rules of Civil Procedure 8(f) requires that pleadings be construed so as to do substantial justice. In reviewing plaintiffs' complaint, a court must view it in its entirety and give effect to all averments. Wright & Miller, *Federal Practice and and Procedure;* Civil § 1286 (1969). The complaint need only set forth a short and plain statement of the claim that will give the defendants fair notice of what the claim is and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957).

The complaint alleges that defendants harass plaintiffs in their attempts to exercise their fundamental rights, that the state regulations are vague, and that the regulations unduly intrude upon their fundamental rights. No language in the amended complaint gives notice to defendants that plaintiffs allege a violation of a state-created due process right, entitlement to a neutral decision maker, or an improper requirement of instruction only from certified teachers.

Plaintiffs had ample opportunity to articulate these additional theories in response to motions to dismiss but failed to avail themselves of these opportunities. Plaintiffs are entitled to have substantial justice done when their complaint is construed, but the law requires that defendants have fair notice of the claims against them. Neither the factual nor legal averments in plaintiffs' pleadings give notice to defendants of such claims.

### A. *Clonlara's Property and Liberty Interests*

■ Plaintiffs first claim is an asserted deprivation of Clonlara's liberty and property interests in its reputation. While it has been recommended that Clonlara be dismissed from the case for lack of standing, Clonlara's independent claim of denial of due process under the fourteenth amendment will be addressed for the sake of completeness and judicial economy on review. Defendants have moved to dismiss this claim pursuant to F.R.Civ.P. 12(b)(6).

Clonlara's claim is best set forth in Plaintiff's Memorandum of Law Opposing Defendant Phillip Runkel's Motion to Dismiss filed January 8, 1988, page 12–13 as follows:

> Clonlara is a 'state-approved' private school, 'licensed' or authorized directly by the state. When Defendants, including Runkel, attempt to promulgate and enforce a policy of eliminating home schooling, which has been defined as a form of private schooling (See A.G.Op. 5579), Defendants effectively seek to remove or alter Clonlara's protected or entitled status.

To the extent Clonlara alleges in the first amended complaint a deprivation of liberty and property interests in its reputation, such a claim is clearly without merit and must be dismissed. Without some state created liberty or property interest at stake, mere injury to reputation will not trigger the protection of the due process clause of the fourteenth amendment. See, discussion *Paul v. Davis*, 424 U.S. 693, 703–712 96 S.Ct. 1155, 1161–1166, 47 L.Ed.2d 405 (1976); *Gruenburg v. Kavanagh*, 413 F.Supp. 1132, 1136 (E.D.Mich. 1976).

Clonlara argues that it has a protected property interest similar to a citizen's interest in keeping a driver's license which has been recognized as protected by the due process clause. See, *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The Court held that once a driver's license is issued, its continued possession may be essential to the person's livelihood which is an important interest entitled to the protections of due process. 91 S.Ct. at 1589.

Clonlara's argument is not persuasive. The state, through the Department of Education, has not attempted to revoke approval[5] of Clonlara as a private school. As of the date of this Report, Clonlara is still operating both its on campus private school and also the HBEP. No actions are referenced which may have been taken to deprive Clonlara of any state approval. There are no revocation proceedings noted, and Clonlara has not articulated how the defendants' activity has significantly altered its rights. Clonlara is still free to provide on-campus schooling and the HBEP. Clonlara only promises to provide parents enrolled in the HBEP program information about the regulations and requirements which home educators must follow. Affidavit of Pat Montgomery ¶ 4(c). There is no state license necessary for Clonlara's provision of such services. Clonlara can fulfill its contractual obligations to the parents without state sanction. Therefore, Clonlara's situation is substantially different from that of state revocation of a driver's license.

### B. *Fundamental Right To Home School*

■ Plaintiffs allege that parents have a "fundamental right" to educate their children at home. (Amended Complaint, ¶¶ 86, 87, 95). The Supreme Court has found that certain rights are so essential to guarantee-

---

**5.** Clonlara states that it is a licensed school, but it has presented no evidence of licensing by the State. The Complaint speaks only in terms of being a state approved school. Nor is there any indication that the State has formally approved Clonlara.

ing individual liberty in our society that any government conduct regulating such conduct will be subject to a strict standard of review. These rights are considered "fundamental." *Nowak*, § 11.5 p. 360. Under recent analysis, once it is determined that a right is fundamental, courts strictly scrutinize the regulation of such right. A state must show that its regulation serves a compelling state interest which cannot be achieved in a less restrictive manner. See, *Hobbie v. Unemployment Appeals Commission*, 480 U.S. 136, 107 S.Ct. 1046, 1049, 94 L.Ed.2d 190 (1987). If the right is not fundamental, it may be subject to reasonable regulation by the state and a court will uphold the regulation if there is a rational basis for the measure. *United States v. Carolene Products*, 304 U.S. 144, 152–153, n. 4, 58 S.Ct. 778, 783–84, 82 L.Ed. 1234.

The right of parents to control the education of their children was first articulated in the cases of *Meyers v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); and *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

In *Meyers*, the Court struck down a state law prohibiting the teaching of foreign languages to children before they had reached the eighth grade. The Court found that the law interfered with the first amendment rights of the teachers and with the power of parents to control the education of their children. *Id.* at 401, 43 S.Ct. at 627. However, the Court also stated that "[t]he power of the state to compel attendance at some school and to make reasonable regulations for all schools, including a requirement that they shall give instructions in English, is not questioned." *Id.* at 402, 43 S.Ct. at 628. Thus, while the Court recognized a right of parents to control their children's education, it did not apply what has become known as strict scrutiny to regulation of that right. The Court spoke in terms of permitting reasonable regulation, a standard not utilized in regulating a fundamental right.

In *Pierce*, the Court struck down as unconstitutional a law which required children to attend public schools. The Court held that the statute unreasonably interfered with the liberty interest of parents to direct the upbringing and education of their children. *Id.* at 534–35, 45 S.Ct. at 573. The Court emphasized that no question was raised concerning the power of the state reasonably to regulate all schools, and to inspect, supervise and examine the teachers and the pupils. *Id.* at 534, 45 S.Ct. at 573. Thus, the language of the Court in *Pierce* speaks of the rights of parents, but applies a test that is not consistent with the existence of a fundamental right.

Plaintiffs rely on *Pierce* and *Meyers* to argue that their right to direct the education of their children is fundamental. However, these cases do not provide clear guidance. They were decided before the Court articulated the current analysis for evaluating such constitutional claims. At least one court has found that these cases do not show the existence of a fundamental right. See, *Hanson v. Cushman*, 490 F.Supp. 109 (W.D.Mich.1980).

The plaintiffs also rely on *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) in which the Court found that requiring Amish children to attend school after eighth grade, pursuant to the state's compulsory education law would violate the rights of Amish parents under the first amendment. The Court stated as follows:

[A] state's interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the *religious* upbringing of their children so long as they, in the words of *Pierce*, "prepare [them] for additional obligations." 268 U.S. at 535, 45 S.Ct. at 573.

*Yoder*, 406 U.S. at 214, 92 S.Ct. at 1532. (Emphasis added)

The Court's characterization of the fundamental right at issue was that of the parents right to direct their child's reli-

gious upbringing, not their child's education *per se.*

The Court also emphasized that in order to evaluate Yoder's claim, it had to first ascertain the nature of the right asserted. 406 U.S. at 215, 92 S.Ct. at 1533. If Yoder, an Amish, were basing his claim on a secular way of life, the first amendment would not apply and his actions would be subject to reasonable government regulations. 406 U.S. at 216, 92 S.Ct. at 1533. The plaintiffs here have no religious basis to their claim. Thus, they are subject to reasonable government regulations. "The very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." 406 U.S. at 215–216, 92 S.Ct. at 1533.

Nor does equal protection require that two groups of parents be treated the same where one claim is based on religious beliefs, and the other on secular concerns. In *Hanzel v. Arter*, 625 F.Supp. 1259, 1264 (S.D.Ohio 1985), parents who believed in "chiropractic ethics" contended that requiring their children to be vaccinated burdened their fundamental rights. Children whose religious beliefs prohibited vaccination were exempted. The court rejected the parents' claim, and recognized that two persons having identical values and objectives will receive "differing treatment under the Constitution depending on whether or not their claims are based upon religious tenets. Such is the balance between flexibility and anarchy which has been struck in our constitutional system." *Id.* Philosophical beliefs do not receive the same deference as religious ones even when the aspirations from each coincide. *Id.*

The Court in *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), a case involving segregated private schools, stressed the limited reach of *Meyer* and *Pierce* emphasizing that *Pierce* held only that while a state may set educational standards, it cannot require attendance at a public school. *Runyon*, 427 U.S. at 177, 96 S.Ct. at 2597. The Court stated:

> While parents have a constitutional right to send their children to private schools and a constitutional right to select private schools that offer specialized instruction, they have no constitutional right to provide their children with private school education unfettered by reasonable government regulation. See *Wisconsin v. Yoder, supra,* 406 U.S. at 213, 92 S.Ct. at 1532; *Pierce v. Society of Sisters, supra,* 268 U.S. at 534, 45 S.Ct. at 573; *Meyer v. Nebraska,* 262 U.S. at 402, 43 S.Ct. at 627.

427 U.S. at 178, 96 S.Ct. at 2598.

The Eighth Circuit, relying upon the above case, rejected claims by parents that the Arkansas Home School Act, which imposed regulations on home schooling, violated their parental and privacy rights. *Murphy v. Arkansas,* 852 F.2d 1039, 1044 (8th Cir.1988).

The court held that strict scrutiny could not be invoked in the analysis of the Home School Act because there was no showing of either discriminatory impact or discriminatory intent, and therefore a strict scrutiny analysis was inappropriate. *Id.* at 1043. The Court also held that there was no fundamental right of parents to supervise their children's education to the extent argued by the plaintiffs.

> "The recognition of such a right would fly directly in the face of those cases in which the Supreme Court has recognized the broad power of the state to compel school attendance and regulate curriculum and teacher certification. See *Board of Education v. Allen,* 392 U.S. [236] at 245–246, 88 S.Ct. [1923] at 1927–1928 [20 L.Ed.2d 1060 (1968)]; *Pierce v. Society of Sisters,* 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925)."

*Id.*

The court also declined to extend the right of privacy to protect parental decisions concerning the direction of a child's education from state interference. The Court cited *Runyan v. McCrary,* 427 U.S. 160, 178, 96 S.Ct. 2586, 2598 (1976) where the Supreme Court held that the state is not restricted from regulating the implementation of parental decisions concerning a child's education. *Id.* at 1044.

No case has yet found a generalized right of privacy under the Constitution which would allow parents the right to home school free from reasonable government regulation. Plaintiffs may have the right to choose home based education over public school education or other private school education. However, such home schooling, in the absence of a claim based on religious beliefs, may be subject to reasonable government regulation. Plaintiffs here have no fundamental right to educate their children at home free from reasonable government regulation.

Plaintiffs have moved for summary judgment on the grounds that requiring a certified teacher certification for home schools violates their fundamental rights. However, they have neither alleged nor argued that the requirement that home schooled children be taught by certified teachers is unreasonable. The court has not been asked to and need not reach the question concerning the reasonableness of such a regulation.

Defendants' motions for summary judgment should be granted with respect to plaintiffs' claims of denial of due process based on a fundamental right.

### VII.

### PLAINTIFF'S CHALLENGE BASED UPON UNCONSTITUTIONAL VAGUENESS

■ Plaintiffs next argue that the statutes and regulations governing home schooling and truancy are unconstitutionally vague in that parents cannot ascertain what they must do in order to avoid prosecution for truancy, which under Michigan law is a criminal charge. See, M.C.L.A. § 380.1599.

The truancy provision is part of the Michigan Compulsory Education Act. The statute requires in pertinent part that:

(1) Except as provided in subsections (2) and (3), every parent, guardian or other person in this state having control and charge of a child from the age of six to the child's sixteenth birthday, shall send

that child to the public schools during the entire school year....

\* \* \* \* \* \*

(3) A child shall not be required to attend the public schools in the following cases: (a) A child who is attending regularly and is being taught in a state approved nonpublic school, which teaches subjects comparable to those taught in the public schools to children of corresponding age and grade, as determined by the course of study for the public schools of the district within which the nonpublic school is located.

M.C.L.A. § 380.1561(1) and (3)(a)

A person who fails to comply with the Michigan compulsory education act is guilty of a misdemeanor.

A parent or other person in parental relation who fails to comply with this part is guilty of a misdemeanor, punishable by a fine of not less than $5.00 nor more than $50.00 or imprisonment for not less than two nor more than 90 days or both.

M.C.L.A. § 380.1599.

Before criminal proceedings can be instituted against a parent, notice and an opportunity to comply with the act are required. If parents do not comply, only then does the attendance officer of the school district make a complaint to the court. See M.C.L.A. § 380.1586–1588.

If an attendance officer investigates the non-attendance of a child and determines that no exemptions under § 380.1561 apply, the officer sends a notice to the parents requiring the child to appear at an appropriate school, public or non-public. M.C.L.A. § 380.1587. If after notice is given, the attendance officer determines that the parents have not complied with the order, the officer brings a complaint in court. M.C.L.A. § 380.1588.

The "void for vagueness" doctrine relied on by plaintiffs is a concept of criminal law. If a criminal statute is unconstitutionally vague, it is void because it fails to provide fair notice, as required by the due process clause, as to what activity is made criminal. The doctrine has also been applied to the review of laws which regulate fundamental

constitutional rights, such as freedom of speech, assembly, or association. See, *Nowak*, § 16.9, p. 846. That aspect of the application of the doctrine is not at issue here because the parents' right to direct their child's education, in the absence of a religious belief, is not a fundamental right. (See discussion VI B) Thus, in order to prevail plaintiffs must show that application of the doctrine voids the criminal truancy statute.

Plaintiffs have also raised the claim that the doctrine should apply to the statute governing private schools. In addition to the compulsory school act allowing for criminal penalties, Michigan has a separate regulatory scheme governing supervision of non-public schools. See, M.C.L.A. § 388.551–.558. (Public Act 1921, No. 302) Home based schools have been construed to be private schools under the definitions of M.C.L.A. § 388.552. *Cf.*, Attorney General Opinion No. 5579 (9–27–79). The act provides that teachers should hold a state teaching certificate to teach in non-public schools and that sanitary conditions and courses of study should be the same as in public schools. M.C.L.A. § 388.553. The statute provides for notice in the event of a violation. The notice must set forth the basis for the violation, and the time and place for a hearing. The hearing is used to determine whether the operators of the school have complied with the act. However, the act provides for no criminal penalties, and thus, the void for vagueness doctrine is not applicable. Also, it is directed specifically at the operators of schools and not at the parents.

The Supreme Court has summarized the void for vagueness doctrine in general as follows: "[The] doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted).

The doctrine focuses on both actual notice to citizens and also arbitrary enforce-ment. The more important component is the latter, that the "legislature establish minimal guidelines to govern law enforcement." *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858 (citing *Smith v. Goguen*, 415 U.S. 566, 574, 94 S.Ct. 1242, 1247–1248, 39 L.Ed.2d 605 (1974)). Without minimal guidelines policemen, prosecutors and juries are without standards and may pursue their own predilections. *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858.

Plaintiffs here argue essentially that the compulsory education act allows for arbitrary enforcement against home schooling parents. See, Letter from Plaintiffs at pages 3–4.

In *Kolender*, the Court invalidated a California statute which required persons who loitered or wandered on streets to provide credible and reliable identification and to account for their presence when requested by a police officer. The Court found that the statute contained no guidelines which prohibited arbitrary and selective enforcement on a constitutionally suspect basis by police officers, as the statute invested almost complete discretion in the officer. *Id.* at 358, 103 S.Ct. at 1858. The rationale for imposing the doctrine was special concern with respect to the potential for arbitrary suppression of first amendment liberties and restriction of freedom of movement. *Id.* 461 U.S. at 357, 103 S.Ct. at 1858–59.

In ascertaining whether a statute is vague, any limiting state court interpretations must be considered. *Smith*, 415 U.S. at 573, 94 S.Ct. at 1247. If the statute is capable of reaching expression protected by the first amendment, the doctrine requires a great degree of specificity. *Id* at 573, 94 S.Ct. at 1247.

The Michigan compulsory education act is clearly distinguishable from the statute in *Kolender*. The Michigan statute does not deal with freedom of movement and does not impact the first amendment liberties of these plaintiffs. The statute requires that parents send their child to public school and exempts them only if their child "is attending regularly and is being taught in a state approved nonpublic school ..." M.C.L.A. § 380.1561(1), (3)(a).

Thus, where parents have not enrolled their child in a public school, they are on notice that they may be liable in a truancy proceeding, unless they meet the limited exception of the statute for non-public schools. The attendance officer's discretion is significantly limited. He/She is to investigate a case of non-attendance only when notified by a teacher, superintendent, intermediate superintendent or other person of a possible violation of the act. M.C. L.A. § 380.1586(1). Thus, the attendance officer has no discretion to initiate action.

Moreover, the legislature has provided guidance in evaluating non-public schools, further limiting the officer's discretion in enforcement. Such schools are to meet the same standards for sanitary conditions, courses of study, and teacher qualifications as provided by the general school laws of the state. M.C.L.A. § 388.551. Additionally, Michigan Attorney General Opinion No. 5579 (Sept. 27, 1979) gives specific direction in the area of home schools:

Where the parent or parents are properly certified as teachers by the State of Michigan or provide a tutor possessed of a certificate from the State of Michigan to educate their child or children in courses that are comparable to the education received in the public school, it would appear that the parents are fulfilling the obligation imposed by law of educating their children.

The opinion concludes that a parent may not provide for his or her child's education at home without having a certified teacher providing instruction in courses comparable to those offered in the public school district in which the child resides.

Thus, the attendance officer has means by which to determine if the exception for attendance at a state approved school is applicable. The school attendance officer whose role is arguably similar to that of the police officer in *Kolender*, has ascertainable standards to guide him, not only in the first instance regarding whether the child is in public school, but also regarding whether the exception should apply.

Even though the Ingham County Circuit Court has declared the "NonPublic School and Home School Compliance Procedures" null and void, the statute itself and the other state limitations on it are sufficiently clear that plaintiffs' claim of void for vagueness should be held to be without merit.

Plaintiff's argument that the comparable subjects or curriculum are not sufficiently specific to avoid being vague is not properly before this court even if the doctrine were applicable. Such argument was first set forth in the letter to the court dated September 30, 1988, which plaintiffs incorporated into their response to the motions for summary judgment dated November 7, 1988.

Moreover, plaintiffs, in earlier pleadings, had stated that no such claim was being raised. In particular, plaintiffs stated, "The claim of unconstitutional vagueness that was rejected in *Sheridan Road [Sheridan Road Baptist Church v. Department of Education*, 132 Mich.App. 1, 348 N.W.2d 263 (1984), affirmed on other grounds, 426 Mich. 462, 396 N.W.2d 373 (1986)] was based on lack of curriculum specificity and is not asserted by plaintiffs." See, Plaintiffs' Memorandum of Law Opposing Defendant Phillip Runkel's Motion to Dismiss, filed 1/8/88, p. 14. Plaintiff's request to amend has been rejected.

Moreover, such a claim is not relevant in determining the applicability of the doctrine to the truancy statute. Whether a defendant in a criminal action is entitled to an exception under the law is a defense which he may raise at trial and on which he bears the burden of proof.

Accordingly, plaintiffs' claims related to the statute's unconstitutionality because of vagueness should also be dismissed.

## VIII.

### VIOLATIONS OF 42 U.S.C. §§ 1985 and 1986

■ In Count II of their amended complaint, plaintiffs have alleged that all defendants conspired to deny the plaintiffs equal protection of the laws in violation of 42 U.S.C. § 1985(3) (¶¶ 99–108). Count III of the amended complaint charges a viola-

tion of 42 U.S.C. § 1986, against defendant Runkel for his alleged neglect or refusal to prevent commission of acts done in furtherance of the § 1985 conspiracy. (¶¶ 109–112) Defendants have moved for dismissal of both of these counts.

It is well settled that no claim lies under § 1986 except on the basis of a valid claim under § 1985. 42 U.S.C. § 1986, *Browder v. Tipton*, 630 F.2d 1149 (6th Cir.1980). The statute provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in Section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so do to, if such wrongful act be committed, shall be liable to the party injured ...

42 U.S.C. § 1986.

Therefore, if plaintiffs do not have a valid § 1985(3) claim, their § 1986 claim is invalid as well.

Section 1985(3) was originally passed by Congress as legislation designed to reach the activities of the Klu Klux Klan. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Plaintiffs' claim of conspiracy under § 1985(3) requires them to establish "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." 91 S.Ct. at 1798. The Court directed that the section be narrowly construed in order to avoid converting the statute into a general federal tort law. *Id.*

Following *Griffin*, the Supreme Court had occasion to review the statute in other than a race based case. The Court stated that "it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, must notably Republicans." *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 836, 103 S.Ct. 3352, 3360, 77 L.Ed.2d 1049 (1983). The Court found "no convincing support ... for the proposition that [§ 1985(3)] was intended to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities. Such a construction would extend § 1985(3) ... in a way that we doubt that the 1871 Congress would have intended when it passed the provision in 1871." *Id* at 837, 103 S.Ct. at 3361.

Plaintiffs here do not have a race-based class. They have alleged that they are "members of a class of people who wish to provide for their children's education at home"; and of "people who wish to home school their children through HBEP and to comply with Michigan law regarding home schooling" (¶ 100 of Amended Complaint) and, as to Clonlara, a "member of the class of educators and parents who prefers [sic] and practice their belief in the value of non-institutional and alternative education." (¶ 101 of Amended Complaint). In order to prevail on these claims, a necessary element which plaintiffs must establish is that the class in which they allege membership is one entitled to the protection of the statute.

The "class-based, invidiously discriminatory animus" required by the statute and articulated by the court in *Griffin* and *United Brotherhood of Carpenters* must be that kind of animus where the discrimination can be said to be "invidious," that is, that the class is "based on race, ethnic origin, sex, religion, [or] political loyalty." *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976).

The distinction between classes protected by § 1985(3) and those that are unprotected is rooted in traditional equal protection analysis. *Browder v. Tipton*, 630 F.2d 1149, 1152 (6th Cir.1980). In *Browder*, the Sixth Circuit held that the classes of individuals protected by the "equal protection of the laws" language of § 1985(3) "are those so-called 'discrete and insular' minorities that receive special protection under the laws because of inherent personal characteristics." *Id.* at 1150. This holding was reaffirmed more recently in *National Communication v. Michigan Public Service*, 789 F.2d 370 (6th Cir.1986), denying the protection of the statute to small telephone companies. The Court stated that § 1985(3) protects such discrete and insular

minorities as have traditionally received special protection under the suspect classification analysis of the fourteenth amendment. *Id.* at 374. The court noted that the statute "clearly does not reach all torts or equal protection violations measured by the rationality test." *Id.*

The protection of the statute has been denied in other circuits to handicapped individuals, *D'Amato v. Wisconsin Gas Company*, 760 F.2d 1474, 1485–87 (7th Cir. 1985); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir.1983); homosexuals, *DeSantis v. Pacific Telephone*, 608 F.2d 327 (9th Cir.1979); state political representatives, *Schultz v. Sundberg*, 759 F.2d 714 (9th Cir.1985); debtors, *Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979); and newcomers to a particular Louisiana parish, *Morgan v. Odem*, 552 F.2d 147 (5th Cir.1977).

A class very similar to that at issue here was denied protection under § 1985(3) by the Eighth Circuit. *Murphy v. State of Arkansas*, 852 F.2d 1039, 1043 (1988) There, the plaintiffs were Evangelical Christians who wished to school their children at home. They had argued that the Arkansas Home School Act violated the equal protection clause of the fourteenth amendment as well as the first amendment "free exercise" clause. They claimed that those who school their children at home for religious reasons are a suspect class and that parental control over the child's education involves a fundamental right. *Id.* The court held in response to plaintiffs' first amendment claim, that the state had a compelling interest in the education of all children and that the state statutory scheme was the least restrictive means of accomplishing that objective. *Id.* at 1041. The court denied plaintiffs' claim of a denial of equal protection under § 1985(3) with respect to the class of parents who school their children at home and held that:

"While home school families impelled by deep-seated religious convictions might be the type of 'discrete and insular minorit[y]' to which Justice Stone referred in footnote four of *United States v. Carolene Products Co.*, 304 U.S. 144, 58

S.Ct. 778, 82 L.Ed. 1234 (1938), the broad secular category of individuals who prefer to school their children at home is not. Clearly the [Arkansas Home School] statute is aimed at this second category of individuals."

*Id.* at 1043.

Thus, neither the individual plaintiffs here nor Clonlara, to the extent that it purports to represent parents who wish or prefer to educate their children at home, has shown the kind of class-based invidiously discriminatory animus needed to sustain a claim under § 1985(3). Moreover, Clonlara cannot on behalf of itself maintain an action under § 1985(3) for loss of economic benefits as such a claim is beyond the reach of the statute. *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 3361, 77 L.Ed.2d 1049 (1983).

Thus, Counts II and III (claims under § 1985(3) and § 1986) of the Amended Complaint should be dismissed.

## IX.

### CLAIMS AS TO MASA AND MPAA

The plaintiffs have named as defendants the Michigan Association of School Administrators (MASA) and the Michigan Pupil Accounting and Attendance Association (MPAAA). Both of these defendants have filed motions to dismiss and motions for summary judgment which are ready for decision.

MPAAA is an unincorporated, non-profit association whose membership is composed of people who are employed by local public school districts in Michigan. See, Affidavit of Janet F. Gabier, President Elect of MPAAA. MPAAA seeks dismissal based on plaintiff's failure to allege any involvement on the part of MPAAA in any of the alleged deprivations. MPAAA, in its motion for summary judgment also argues that plaintiff has failed to show that MPAAA is a state actor for purposes of liability under § 1983.

MASA has moved for summary judgment on the grounds that any actions which it took are protected by the first

amendment and cannot serve as the basis of the § 1983 liability. MASA is also an unincorporated, non-profit, association composed primarily of employees of school districts.

## A. The Associations Are Not Acting "Under Color of Law"

As discussed in Part VI, in any Section 1983 action, the conduct complained of must be alleged to have been committed by a person acting under color of state law. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Bacon v. Patera*, 772 F.2d 259, 263 (6th Cir.1985).

"In cases under § 1983 'under color' of law has been treated as the same thing as the "state action" required under the Fourteenth Amendment." *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982) (citing *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 1157, n. 7, 16 L.Ed.2d 267 (1966)).

The question presented at the summary judgment stage is whether, under the standards set forth in *Celotex*, the plaintiffs have shown that the defendants' action was such. Normally, the fourteenth amendment reaches only *states*. *N.C.A.A. v. Tarkanian*, —— U.S. ——, 109 S.Ct. 454, 461, 102 L.Ed.2d 469 (1989). However, private persons may be held to be state actors where the alleged infringement of a right may be fairly attributed to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

The Supreme Court has outlined three separate tests for determining who are state actors under section 1983. These three tests are the nexus test, *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), the public function test, *Blum v. Yaretsky*, 457 U.S. 991, 1011–12, 102 S.Ct. 2777, 2789–90, 73 L.Ed.2d 534 (1982), and the symbiotic relationship test. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

The reach of the public function test was greatly limited by the decision of *Rendell–*

*Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). In *Rendell–Baker*, the Court held that a private school which was funded by public money, was heavily regulated, and cared for special education students was not a state actor. The Court rejected the argument that because it performed a public function its actions could be attributed to the state. *Id.* 102 S.Ct. at 2772. The function performed must have traditionally been the exclusive prerogative of the state. *Id.* Plaintiffs have made no allegations that either MASA or MPAAA perform traditional public functions and thus, at least under this prong of the state action test, have failed to state a claim against these defendants pursuant to § 1983.

The "symbiotic relationship" test was first enunciated in *Burton* but its application was subsequently rejected in both *Blum* and *Rendell–Baker*. In *Burton*, a restaurant which operated in a public parking garage and engaged in discriminatory practices was held to be a state actor because "[t]he State has so far insinuated itself into a position of interdependence with Eagle that it must be recognized as a joint participant in the challenged activity. . . ." *Burton*, 365 U.S. at 725, 81 S.Ct. at 862. The public garage needed the benefits of revenues from the private businesses to continue to operate. Here, plaintiffs have not alleged nor shown the interdependence necessary for a symbiotic relationship. Plaintiffs merely allege that both associations are comprised of persons who are employed by the state public school systems and that the school systems pay the costs of the employees' membership dues. However, as discussed later, no competent evidence has been presented to support this second allegation.

Plaintiffs do, however, allege that there is a nexus between the associations and the state. The nexus test requires that there be a sufficiently close relationship between the state and the alleged wrongdoer (MPAAA and MASA) such that the actions of MPAAA and MASA "may be fairly treated as that of the State." *Jackson*, 419 U.S. at 345, 351, 95 S.Ct. at 451, 453 (1974).

Extensive regulation of a private entity is insufficient for that entity's actions to be deemed those of the State. *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785–86. A state can normally be held responsible for a private decision only when it has exercised coercive power or has provided such encouragement either overt or covert that the choice must be deemed that of the state. *Id.* In *Blum,* the Court found that a private nursing home's decision to change the level of care available to patients which caused the state to either reduce or terminate the patient's Medicaid benefits was not state action. The nursing homes were extensively regulated by the State and received large portions of their revenues from the Medicaid program, but were not coerced or encouraged in their decision.

Recently, the Supreme Court rejected a college coach's argument that when the National Collegiate Athletic Association (N.C.A.A.) makes recommendations concerning discipline of coaches employed by a state entity, it is a state actor. *N.C.A.A. v. Tarkanian,* —— U.S. ——, 109 S.Ct. 454, 102 L.Ed.2d 469 (1989). The state had not created a legal framework governing the N.C.A.A.'s activities, no official authority had been given the N.C.A.A.; nor had the state transformed N.C.A.A. rules into state law. 109 S.Ct. at 462–465.

MPAAA has submitted the affidavit of Janet F. Gabier, an assistant principal at Clarkston High School and the then president-elect of MPAAA. She stated that MPAAA is an unincorporated, non-profit association which is composed primarily of pupil accountants and attendance personnel employed by local public school districts. Affidavit at ¶¶ 1, 3, 5. Membership in MPAAA is entirely voluntary and school districts do not require membership in MPAAA. Approximately, two hundred school districts' pupil attendance officers are not members. MPAAA is not subject of state regulation nor does it receive money from the State of Michigan. Affidavit at ¶¶ 7, 8, 11, 12.

The plaintiffs' complaint alleges that MPAAA has an official policy against home schooling, and that MPAAA has a policy of being "pro-active" in taking home schoolers to court.[6] In support of the allegation that MPAAA is a state actor, plaintiffs submitted the affidavit of Pat Montgomery, the director of Clonlara School. She stated that she received a copy of a report prepared by MPAAA which called home schooling a critical problem. This report was allegedly circulated to many local school officials. Affidavit at ¶ 10. Montgomery also stated that "[she] personally contacted the officers of Plymouth–Canton and Huron Valley School Districts and learned that those school districts do in fact pay all costs for employees to join MPAAA and MASA, including dues and all expenses relating to the attendance of meetings." Affidavit at ¶ 23. This statement is based upon hearsay and would not be admissible at trial[7] and thus cannot be relied upon in ruling on this motion for summary judgment. See, F.R.Civ.P. 56(e).

Plaintiffs have failed to come forth with any evidence showing that the state either encouraged or coerced MPAAA or MASA to take any allegedly wrongful action. Plaintiffs seem to be arguing that any time persons who may be state actors in their regular employment form an association related to their jobs, the association is automatically a state actor as well. Nothing in the record shows state coercion of any associational conduct or that the state delegated any authority to MPAAA and MASA. Adoption of plaintiffs' position would transform all private, independent associations whose members are public employees into state actors. No case support is offered for such an argument, and such transformation would have great impact on the associational activities of public em-

---

6. The MPAAA has not initiated any legal action directly against Clonlara and there is no allegation that the policy making members of MPAAA have somehow controlled or directed truancy proceedings against the Kuhars.

7. Clearly, this statement is only relevant if offered to prove the truth of the matter asserted. Further, there is nothing in the record to show that this meets any exception to the hearsay rule such as admission by a party opponent which could be relied upon under F.R.E. 801(d)(2).

ployees who may have common interests, concerns and needs. Clearly, something more than plaintiffs allege is required to transform such associations into state actors.

Summary judgment is appropriate for MPAAA and MASA on the § 1983 claims on the basis that neither is a state actor for purposes of either § 1983 or the fourteenth amendment.

### B. *The Associations Are Protected By The First Amendment*

■ MASA has moved both for dismissal and also summary judgment on the grounds that the conduct of which plaintiffs complain is protected by the First Amendment. As MASA correctly points out, plaintiff's sole allegations against it are contained in paragraphs 72 and 81 of the first amended complaint which states: (¶ 72) "MASA's executive board recently passed a resolution urging state legislators, the Michigan State Board of Education and other organizations to discuss what steps could be taken to force the issue on this [home schooling]." In paragraph 81, plaintiffs allege that MASA representatives were present at a meeting with representatives of MPAAA and the Michigan Department of Education.[8]

MASA argues that the above activities are efforts to petition the government which are protected under the first amendment and thus under the Noerr–Pennington doctrine. See, *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). This doctrine was developed by the Supreme Court in the context of antitrust law to prevent suits with respect to a person's or company's efforts to petition and influence government behavior. The doctrine has been extended to cases alleging violations of the civil rights law. See,

*Stachura v. Truszkowski,* 763 F.2d 211 (6th Cir.1985); *rev'd on other grounds,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *In re: IBP Confidential Business Documents Litigation,* 755 F.2d 1300 (8th Cir.1985); *Sern v. United States Gypsum, Inc.,* 547 F.2d 1329 (7th Cir.1977), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607 (8th Cir.1980).

Plaintiffs have accused MASA only of attempting to influence state government by passing resolutions and by meeting with state education officials. Plaintiffs concede that MASA actions would be protected first amendment activity if they were done by a *private* person petitioning the government. Plaintiffs appear to claim that MASA is a defendant acting under color of law, thus is a state actor, and application of the *Noerr–Pennington* doctrine would be nonsensical when applied to a state actor. The end result of plaintiffs' premise is the doctrine could never apply in § 1983 cases as the defendants would always be alleged to be acting under color of law.

However, the view that *Noerr–Pennington* does not apply to § 1983 actions was rejected *sub silencio* in *Stachura,* a § 1983 case. In *Stachura,* the Sixth Circuit affirmed application of the doctrine to a parent who organized and transmitted complaints to the school board which resulted in a teacher's dismissal. 763 F.2d at 211.[9] Other courts have also applied *Noerr–Pennington* to § 1983 claims. See, *Gorman,* 626 F.2d 607 (8th Cir.1980); *Sawmill Products, Inc. v. Town of Cicero,* 477 F.Supp. 636 (N.D.Ill.1979); *Weiss v. Willow Tree Civic Association,* 467 F.Supp. 803 (S.D.N.Y.1979); *Aknin v. Phillips,* 404 F.Supp. 1150 (S.D.N.Y.1975).

Plaintiffs also argue that *Noerr–Pennington* applies only where defendants have acted to *defend* themselves from government action. This distinction

---

**8.** It is doubtful that these allegations are sufficient to withstand a motion to dismiss based upon lack of personal involvement, a prerequisite of liability under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). See discussion, infra, at X.

**9.** Even if the doctrine did not apply, this court would recommend dismissal of the claim against MASA for failure to adequately show state action.

is not helpful nor is it logical. The right to petition the government must necessarily include both the ability to petition the government not to take actions against the petitioner (MASA) and also the ability to encourage the government to take other actions. Plaintiffs' distinction is also unsupported by the case law. See, *Stachura* which involved petitions by the defendant-parent seeking action against plaintiff-teacher.

Plaintiffs argue that even if the doctrine were to be applied, an exception to the doctrine also applies. If the motive behind the activities at issue were actually to harm the plaintiff directly, then it is not protected. *Gorman*, 626 F.2d at 615. *In re IBP*, 755 F.2d at 1313 (providing false information to harm another). Plaintiffs have come forth with no evidence as required by *Celotex* to support such an allegation. In fact, plaintiffs have nowhere articulated with any precision what MASA did and said and to whom.

MASA's motion for summary judgment on the basis of application of the *Noerr–Pennington* doctrine should be granted.

## X.

### LACK OF PERSONAL INVOLVEMENT OF PARTICULAR DEFENDANTS

Plaintiffs have named as defendants in this suit: James Doyle, Superintendent of Huron Valley Schools; the Huron Valley School Board; James Faust, Director of Pupil Personnel Services at HVS; and the Plymouth–Canton Community School Board. These defendants are identified at ¶¶ 8, 9, 10 and 13 of the First Amended Complaint respectively. The only other allegation in the complaint relating to these defendants is ¶ 78 which states Faust set up meetings between MPAAA and MASA.

The current plaintiff-parents do not reside in the Huron Valley School District. Apparently, the Gibsons who were formerly named plaintiffs did. Clonlara does not allege or show by any competent evidence that it or the named parents has had any interactions with the HVS district.

■■■ Personal involvement is a prerequisite of liability under § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability under § 1983 cannot be established on the basis of *respondeat superior. Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Liability of supervisory personnel in § 1983 suits must be based on more than the right to control employees. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1985). A plaintiff must show:

"that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."

Faust, HVS Board and Doyle appear to be in the lawsuit only as holdovers from when the Gibsons were named plaintiffs. Plaintiffs in response to the motions for summary judgment and in support of their own have failed to point to any evidence showing any involvement on the part of these defendants.

As to the HVS and PCCS school boards, plaintiffs have not alleged any affirmative acts on the part of the boards nor have they alleged or shown any policy of the boards which caused the alleged unconstitutional harm. The school boards *cannot* be held liable on the basis of supervisory liability which is what plaintiffs are attempting to do.

Summary judgment should be granted Faust, Doyle, the PCCS Board, and the HVS Board as to the § 1983 claims against them.

## XI.

### DISMISSAL ON ELEVENTH AMENDMENT GROUNDS

■■■ Runkel, the Superintendent of Public Instruction, argues that plaintiffs have not stated a claim against him in his personal capacity, that as a state official he is

not a person within the meaning of 42 U.S.C. §§ 1983, 1985(3) or 1986, and that the eleventh amendment bars damage claims against him in his official capacity. Plaintiffs allege that Runkel is liable in both his official and personal capacity.

Civil rights suits against individuals in their personal capacity [10] impose liability on government officials for actions taken under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (citations omitted). An official capacity suit is only another way of bringing suit against the entity of which the agent is an official. 473 U.S. at 165, 105 S.Ct. at 3105. Damages in a personal capacity suit are recovered from the individual and in an official capacity suit from the government entity. 473 U.S. at 166, 105 S.Ct. at 3105.

Under § 1983 the proofs of a personal capacity suit differ from those of an official capacity suit. In an official capacity suit, the entity's policy or custom must have played a part in the alleged deprivation. 473 U.S. at 166, 105 S.Ct. at 3105. The defenses, particularly in terms of available immunities will also differ. The only immunities available in official capacity suits are those involving sovereignty. 473 U.S. at 167, 105 S.Ct. at 3105–06.

Contrary to defendant's position, plaintiffs have pled both a personal capacity and official capacity suit against him. All that is needed for the personal capacity suit are allegations that the person acting under color of state law deprived plaintiff of a federal right. *Graham,* 473 U.S. at 166, 105 S.Ct. at 3105. Plaintiffs have so alleged and the merits of those claims are discussed elsewhere.

The suit against defendant in his official capacity is essentially a claim against the State of Michigan. Runkel is the Superintendent of Public Instruction and pursuant to the Michigan Constitution 1963, Article 8, § 3 is an officer or arm of the state.

"An unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Penhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). This Eleventh Amendment bar to suits applies with one exception, regardless of the relief sought. The one exception is that suits will be permitted which challenge the constitutionality of a state official's conduct. 465 U.S. at 101–102, 104 S.Ct. at 908–909. In such a suit, injunctive relief may be permissible. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974).

Plaintiffs do not contest the fact that a suit against Runkel is essentially one against an arm of state. Rather, plaintiffs allege that the exception to the Eleventh Amendment bar applies in this case. Plaintiffs argue that Runkel's actions were *ultra vires,* and thus, this should not be considered a suit against the state. *Penhurst,* 465 U.S. at 101 n. 11, 104 S.Ct. 909 n. 11. The Supreme Court has greatly narrowed the scope of this doctrine and has "questioned the continued vitality of the *ultra vires* doctrine in the Eleventh Amendment context." 465 U.S. at 114 n. 25, 104 S.Ct. at 915 n. 25. The *ultra vires* doctrine is to be applied only when the official "acts 'without any authority whatever.'" 465 U.S. at 101 n. 11, 104 S.Ct. at 909 n. 11 (citations omitted).

Plaintiff's position is not well taken. Even if Runkel, via the Department of Education, has no authority to promulgate regulations regarding home schooling, Runkel has statutory authority to take actions concerning home schools. Home schools are considered non-public schools and are subject to M.C.L.A. § 388.551; Attorney General Letter Opinion (5/18/61), OAG, 1979–80, # 5579, p. 416. Clearly, Runkel cannot be said to be "without any authority whatever" to act. The *ultra vires* doctrine is narrow. Plaintiff has not shown that the facts of this case fit that narrow exception. The suit is clearly one against the State of Michigan challenging the constitutionality of the state's action. Thus, the Eleventh Amendment bars all but injunctive relief.

---

**10.** These are also commonly referred to as individual capacity suits.

## XII.

For the reasons discussed in this Report and in conformance with the related Recommendation filed this date, plaintiffs' action should be dismissed.